HARVEY SCRIBNER and another, in equity,

*vs.*

CATHARINE S. ADAMS, executrix of the will of JOSEPH ADAMS,
and EPHRIAM HATCH, administrator on the estate of
GEORGE F. ADAMS.

## Kennebec.    Opinion May 31, 1882.

*Equity.    Principal and surety.    Evidence.    Executors and administrators.*
*Practice.*

The complainants were co-sureties with J. A. on a bond given by his son G.
as principal for the faithful performance of his duties as cashier of a bank.
G. proved to be a defaulter, assigned an insurance policy which he had taken
out upon his own life to his father to indemnify him for his liabilities upon
this bond and certain other paper (the amount of the insurance being more
than sufficient to cover them all) and shortly after died insolvent, three
minor legitimate children surviving him.

J. A. accepted the assignment, notified the insurance company thereof, and
received their consent thereto, paid a premium which fell due thereon, informed
his co-sureties that he had received it and requested them to pay his third of
the sum due, on the bond, promising to reimburse them when he realized on
the life policy. They however paid nothing until called upon by the bank
after J. A. had died also, insolvent. Upon the call of the bank they paid the
amount of the cashier's deficit, one-half each.

With the consent of J. A's executrix, G's administrator took the policy giving
her an indemnity and collected and still holds the amount thereof, though the
complainants have demanded so much thereof as was necessary to reimburse
them for the amount which they paid, of both the respondents who are
respectively the executrix of J. A. and the administrator of G.

*Held,* that if the minor children of G. had been joined as defendants so that the
rights of all parties might be settled in one suit, complainants would be enti-
tled upon this showing to a decree in equity that the assigned policy was
held by J. A. and the proceeds thereof by his executrix through her agent,
and by the administrator of G. subject to a trust in favor of the complain-
ants for their indemnity as co-sureties with J. A. on the bond. *Held*
*further,*

1. That the co-sureties were entitled to the benefit of the indemnity under
such circumstances although it was intended by the assignor and assignee
for the benefit of J. A. alone.

2. That the consent given by J. A's executrix that her co-respondent might
collect the money on the policy, and the fact that he did collect and now
holds it having indemnified her cannot relieve the executrix from her respon-
sibility to the complainants for the trust fund.

3. That the testimony of one of the complainants as to matters occurring in the life time of J. A. is not competent in this process against his executrix.

4. That the declaration of J. A. made after the assignment to him are not competent evidence for the respondents.

5. That before a decree can be had for complainants the minor children of the assignor must be made parties to the suit and have an opportunity to be heard through their guardian.

It is not good practice to print the formal parts of documents respecting which no question is made for presentation to the court.

ON REPORT.

Bill in equity, heard on bill, answer and proof.

The opinion states the case and material facts.

*Joseph Baker*, for the plaintiffs, cited : Angell and Ames, Corp. § 234 ; White and Tudor's Lead. Cas. in Eq. Part 1, p. 171 ; *Gould* v. *Fuller*, 18 Maine, 364 ; 1 Whart. Ev. § § 261, 262, 265 ; *Ins. Co.* v. *Mosely*, 8 Wall. 397 ; *Small* v. *Gilman*, 48 Maine, 506 ; *Battles* v. *Batchelder*, 39 Maine, 19 ; *Wilson* v. *Sherlock*, 36 Maine, 295 ; *Pulsifer* v. *Crowell*, 63 Maine, 22 ; 2 Whart. Ev. § § 1164, 1165.

*S. C. Whitmore and Henry S. Webster*, for the respondents.

Complainants have a plain, adequate and complete remedy at law against the insurance company for any interest they may have in this policy, or against Ephraim Hatch, personally, for their interest in the money which he collected on said policy. *Russ* v. *Wilson*, 22 Maine, 207 ; *Crooker* v. *Rogers*, 58 Maine, 339 ; Addison, Contr. 984 ; Stat. 1874, c. 235.

A life policy when the annual premium is less than one hundred and fifty dollars, is not assignable. R. S., c. 75, § 10 ; c. 49, § 65. There are third parties interested, the children.

This policy was not assigned to secure the principal debt, but to secure only what Joseph Adams may have been obliged to pay. Brandt on Suretyship and Guaranty, § § 284, 285.

George F. Adams' estate being insolvent, this claim should have been presented to the commissioners appointed by the probate court. R. S., c. 66, § 3. The declarations of Joseph Adams are not admissible unless they are against his pecuniary interest. 1 Whart. Ev. § § 226, 228.

The bill cannot be sustained on the ground of fraud. The charge of collusion between the defendants is not sustained. The answers of defendants deny the charge, and are to be taken as evidence, and require the testimony of two witnesses or its equivalent to overcome them. *Appleton* v. *Horton*, 25 Maine, 23; *Gould* v. *Williamson*, 21 Maine, 273; *Buck* v. *Swazey*, 35 Maine, 41; *Gilmore* v. *Patterson*, 36 Maine, 544; *Alford* v. *McNarrin*, 44 Maine, 90; *Piscataqua F. and M. Ins. Co.* v. *Hill*, 60 Maine, 178.

The bill cannot be sustained on the ground of trust. Equity will not lie where the plaintiffs have a complete and adequate remedy at law. *Spofford* v. *B. and B. R. R. Co.* 66 Maine, 51; *Jones* v. *Newhall*, 115 Mass. 244. Assumpsit is the proper remedy of a surety against his co-surety for contribution. *Davis* v. *Emerson*, 17 Maine, 64; *Goodall* v. *Wentworth*, 20 Maine, 322; *Rollins* v. *Taber*, 25 Maine, 144; *Bachelder* v. *Fisk*, 17 Mass. 464.

When compensation in damages is the only relief that can be given, a court of equity will not assume jurisdiction. Compensation is decreed by a court of equity only as incidental to other relief. Story Eq. Jur. § 794-99; *Milkman* v. *Ordway*, 106 Mass. 232; *Kempshall* v. *Stone*, 5 Johns. Ch. 193; *Law* v. *Thorndike*, 20 Pick. 317; *Blood* v. *White*, 3 Cush. 416; *Hall* v. *Marston*, 17 Mass. 575; *Lewis* v. *Sawyer*, 44 Maine, 332; *Calais* v. *Whidden*, 64 Maine, 249.

Hatch, if liable at all, is liable personally, and not in his representative capacity. An executor or administrator cannot create a debt against the estate which he represents. *Sumner* v. *Williams*, 8 Mass. 162; *Davis* v. *French*, 20 Maine, 21; *Walker* v. *Patterson*, 36 Maine, 273; *Plimpton* v. *Richards*, 59 Maine, 115.

If the court should be of the opinion that the bill can be sustained, the case of the defendant Catharine S. Adams should be distinguished from that of the other defendant. No decree against her is asked for, and none can be made. It is not pretended that she holds anything in trust for the plaintiffs, or can in any way control or direct the funds which they claim. 1 Daniell's Chan. Prac. 342; Story's Eq. Plead. § 231.

But if the bill be sustainable, and for any technical cause it was necessary to make Mrs. Adams a party, no decree against her for costs should be made. *Stone* v. *Locke*, 48 Maine, 425.

BARROWS, J.    The bill alleges, and it is either admitted in the answers, or the proof shows, that the complainants were co-sureties with Joseph Adams the testator of one of the respondants upon a bond given by George F. Adams the intestate of the other respondent, as principal, to the Gardiner National Bank, conditioned for the faithful performance of said principal's duties as cashier of said bank, with the usual accompanying covenants ; that said George F. Adams proved to be a defaulter, and the two complainants being called upon by the bank, October 6, 1879, after the death of their co-surety Joseph Adams, and of the principal George F. Adams, (the latter of whom died April 1, 1879, and the former April 24, 1879,) paid the whole of the deficit in the cashier's accounts amounting to thirteen hundred and ninety-nine dollars and seventy-two cents, each paying one-half of said sum, and the estates of the principal and co-surety contributing nothing to the discharge of the bond thus procured by the complainants ; that the estates of both the principal and co-surety are in process of administration in probate court as insolvent estates ; that George F. Adams left no property real or personal of any considerable amount ; that said George F. in 1867 took out an insurance policy on his own life payable to his personal representatives for the sum of three thousand dollars, which was valid at the time of his decease, bearing on it an assignment in due form to Joseph Adams, the complainants' co-surety, subscribed by said George F. Adams, communicated to the insurance company and the company's consent thereto obtained ; that the said assignment purported to be in consideration of said Joseph Adams's liability for said George F. on two promissory notes of three hundred and fifty dollars each and two bonds one of which was the bond above mentioned, to the Gardiner Bank, (on which the complainants also were sureties,) and the other a bond given by said George F. as administrator of the estate of one Wilson, and that it purported also to be given to indemnify said Joseph for any sums he might be obliged to pay on account of said liabilities or other-

wise for said George F. ; that said Joseph Adams paid nothing on account of the two three hundred and fifty dollar notes and his estate was finally discharged from the Wilson administration bond on payment of thirty-six dollars; that the respondent Hatch (notwithstanding this assignment which it is charged was held in trust by Joseph Adams and his executrix for the benefit and indemnity of his co-sureties as well as himself and his estate) got possession of said policy and by an arrangement made with the co-respondent to indemnify her in any event, collected on or about December 20, 1879, amount due on the policy as administrator of George F. Adams, and still holds it although due demand has been made upon both the respondents in their capacities as executrix and administrator as aforesaid.

While some of the facts above recited are formally denied in the answers on the ground of want of knowledge on the part of the respondents, the proof of those not admitted is plenary, and the real controversy between the parties is substantially limited to three inquiries. Was there collusion between the respondents to deprive the complainants of their equitable rights in the proceeds of the life policy? Was the assignment from George F. to Joseph Adams perfected by delivery, and if it was, what was its effect? Have the complainants such an ample and sufficient remedy at law as precludes a resort to equity and the maintenance of this process?

Certain other facts which have a bearing upon the decision of these questions ought here to be noted.

George F. Adams left no widow but did leave three legitimate minor children who have a legal guardian, the sister of said George F., but who are not here represented and have not been made parties to this suit, though it is apparent they have an interest in the questions here presented. The body of the assignment upon the back of the policy is in the handwriting of Joseph Adams who was a lawyer of long and reputable standing.

The signature of George F. Adams was attested by two witnesses, one of whom was his sister, and it was affixed on the day when he was about to leave for California by a night train

shortly after an official examination of his accounts with the bank which ascertained his defalcation. The testimony of the insurance agent shows conclusively that, shortly after the execution of the assignment by George F. Adams the policy with the assignment upon it duly executed was in the actual possession of the assignee, for he brought a copy of the assignment made by himself (including copies of the signatures of the assignor and the attesting witnesses,) and probably the policy itself to the insurance agent to have it communicated to the company and their consent procured.

It appears further that upon the suggestion of the agent to Joseph Adams, that the company would probably purchase the policy of him, said Joseph replied that he preferred to keep it running and afterwards when an installment of premium fell due he paid it by his check for sixty-three dollars. The deposition of one of the complainants offered to prove, and mostly consisting of, declarations of Joseph Adams is incompetent as to all matters occurring in the lifetime of the deceased. R. S., c. 82, § 87, as amended by c. 145, laws of 1873 ; *Trowbridge* v. *Holden,* 58 Maine, 120.

The depositions offered by the respondents to prove declarations of their decedents are alike inadmissible, though for a different reason. The plaintiff's testimony is incompetent because a party shall not and ought not to be heard to testify in his own case when his adversary is prevented by death from appearing to testify in relation to the same matters. The temptation to falsehood and the danger of injustice thence arising are too great.

On the other hand the depositions offered by defendants cannot be received so far as they consist of declarations made by the decedents in their own favor or in support of the position now taken by their representatives, when not made in the presence of the complainants nor accompanying any act which properly belongs to the transactions between the parties.

. The written request of Joseph Adams to the two complainants, reciting the fact of the assignment of the policy to him and asking them to pay his third of the liabilities under the bond to the

Gardiner bank and promising to reimburse them "so soon as sufficient funds shall come into my hands on the said policy," which is offered by the complainants — is competent evidence in this suit against his executrix, while other declarations of his, oral and written, at different times in the absence of the complainants, offered by respondents, being declarations of a party in his own favor, cannot be received (though put upon the plausible ground that they are declarations against his own right as assignee of the policy) because the equitable rights of the complainants in the trust fund, whatever they may be, accrued by force of legal and equitable principles, which the assignee could not control, and at the time when the assignment was made, and therefore cannot be affected by any subsequent acts or declarations of the assignee and trustee in disparagement of the rights of the beneficiaries in the trust, in a suit to have the trust declared and enforced against the representatives of the parties to the assignment. We feel that we ought to remark here that the record presented for adjudication consisting of one hundred and sixty-four large printed pages less than half of which exhibit anything material or relevant, suggests either an obliviousness or a disregard of the rules of chancery practice designed to prevent a case from being incumbered with useless matter, which is much to be regretted. In the taxation of costs it will be necessary to inquire where the fault rests which resulted in the production of so much unnecessary printing, *e. g.* page upon page of magistrates' certificates of the taking of depositions upon which no question arises, and much other matter which does not serve to elucidate the case and which by the mutual action and attention of counsel ought in all cases to be eliminated. Too many cases are painfully suggestive of the slaughter of the bird mentioned in Æsop's Fab. LVII, Croxall's ed. Philadelphia, 1802, page 90.

Turning now to the principal questions discussed in the arguments of counsel:

I. We cannot say upon the proof here presented that the executrix of the will of Joseph Adams was guilty of any fraudulent collusion with the co-respondent for the purpose charged of depriving the complainants of their equitable rights in the pro-

ceeds of the assigned policy. The respondents, both of them, deny under oath that there was any such fraudulent collusion. We think the circumstances of the transaction not inconsistent with honest intentions, and the arrangement perhaps as convenient to preserve the rights of all the parties who might be interested as any that could have been adopted. There seems to have been no secrecy as to the course of proceeding. That is a badge of fraud which is in this case wanting, at least so far as the executrix of Joseph Adams is concerned. The only indication of it which we observe in the whole case, is the unsuccessful attempt on the part of the administrator of George F. Adams, to withhold the evidence of the assignment; and this was *post litem motam*. But there was an open question between the two estates (for the correct adjustment of which both the executrix and the administrator were held to the different parties whose rights and interests they respectively had in charge,) as to the completion of the transfer of the policy from George F. to Joseph Adams, and as to the effect of that transfer, a question in which the minor children of George F. Adams had in reality a greater interest than his administrator representing his estate and creditors could have.

The proceeds of this policy if not assigned by George F. Adams, would go under R. S., c. 75, § 10, to his minor children after deducting the premium paid therefor within three years prior to his decease, and would not constitute assets of his estate for the payment of debts.

But George F. Adams in his lifetime had entire control of it. It was competent for him to sell it to the company, to raise money by pledging it as security, or to use it to secure those who had contracted liabilities in his behalf thus indirectly securing his debts with it. But any remainder after the discharge of the liens which he placed upon it would still enure to the benefit of his children. It made little difference then whether the sum due on the policy was collected by the executrix of the assignee or the administrator of the party insured, provided proper security were given that it should be forthcoming when it should be determined who was entitled to it. It might well be more convenient for the

executrix to receive than to give such security, and so it was arranged. But by taking this security and thereupon consenting that the three thousand dollars due on the policy should be collected by her co-respondent, the executrix could not free herself from any trust in favor of his co-sureties which might affect the policy or its proceeds in the hands of her testator. If the complainant's right in equity to be indemnified out of the proceeds of the policy is established, the executrix must be declared to hold it in trust for them, though she has allowed it to pass into the hands of another, and she must look to the security she has received for her own indemnification. The money in such case would be regarded as in the hands of her agent.

II. We can have no doubt that the assignment was perfected by delivery. Aside from the clearly proved facts of actual possession and control by Joseph Adams after his son had left home never to return alive, it is simply incredible that parties situated as they were should have taken the trouble to do what they confessedly did towards effecting a transfer of the policy without completing the transaction by an actual intentional delivery and acceptance. No other hypothesis will explain the subsequent acts and doings of Joseph Adams (who was reputed an honest man and a respectable lawyer) in procuring the assent of the insurance company to the assignment, in paying the subsequently accruing premium, and in using the assignment to procure a credit for himself and to induce the complainants to pay his third of the amount due the bank as well as their own.

The transfer being complete, under the circumstances here developed, we think it enured to the benefit of the complainants as co-sureties with Joseph Adams.

The general doctrine on which this depends was incidentally recognized as sound by this court in *Gould* v. *Fuller*, 18 Maine, 366, and it is supported by the cases there cited. It matters not that the security may have been given for the indemnity of one of the sureties only. The rights of the co-sureties result not from contract or the intention of the principal and the surety who is indemnified, but from the effect of settled principles of equity arising out of the relation which the co-sureties bear to each other.

It is not for the principal debtor while the contract remains unadjusted and the duties of his sureties to each other unsettled to cast the whole burden upon one or a part of the sureties, by securing the others, when all in the inception of the undertaking stood upon equal footing. What the debtor puts in the power of one for his relief, constitutes a fund for the indemnity of all. *McMahon* v. *Fawcett*, 2 Randolph, 514; S. C. 14 Am. Dec. 796; *Deering* v. *Lord Winchelsea*, 2 Bos. & Pull. 270; *Hinsdill* v. *Murray*, 6 Vt. 136; *Messer* v. *Swan*, 4 N. H. 481.

In one of A. C. Freeman's useful notes in 15 American Decisions, 526, (appended to the case of *Moore* v. *Moore*, 4 Hawks, 358, there given) may be found the general rule as stated in Brandt on Suretyship, § 233, from which it appears that ordinarily when one of several sureties has the means of indemnification for himself, put into his hands by the principal before the debt is paid, he becomes trustee of it for the benefit of all the sureties, "even though he obtained it by his own exertions and it was intended for his sole benefit." The case (*Moore* v. *Moore*,) and the note of Mr. Freeman, alike emphasize the well taken distinction that a surety before becoming such, may fairly stipulate for a separate indemnity for himself, and if he does so, his co-sureties are entitled to the surplus only, after his exoneration, and other authorities to this effect are cited. But this is of no importance in the case at bar, as the fund assigned, seems to be ample for the security, not only of Joseph Adams but of the complainants also. See also, White and Tudor's Leading Cases in Equity, part I, page 171. Nor does it seem to affect the co-surety's right in such case that the conveyance is conditioned only for the indemnity of the party to whom it is given, and not for the payment of the debt. *New Bedford Savings Inst.* v. *Fairhaven Bank*, 9 Allen, 175.

III. It was formerly supposed that all claims and questions between co-sureties (except where there was an express contract between them, even those where contribution only was sought,) were properly cognizable only in equity. Story's Eq. Jur. Redfield's ed. 1866, c. VIII, § 495.

While it is now well settled that an action at law may be maintained by one co-surety against another without an express con-

tract, (*Bachelder* v. *Fiske*, 17 Mass. 464; *Davis* v. *Emerson*, 17 Maine, 64,) it by no means follows that a process in equity will in no case lie, even where that is the principal result sought. Ordinarily it may be found that an adequate and complete remedy may be had at law where the purpose is merely to compel contribution, and where it is so, that is the remedy to be pursued. But the cases which most unequivocally recognize this doctrine, have a reservation in favor of equity jurisdiction where the remedy at law, though open to the pursuer, would not be complete, or is doubtful or circuitous, or in cases where there are a multiplicity of parties interested, having distinct and independent claims. *Jones* v. *Newhall*, 115 Mass. 244. That jurisdiction will be sustained in equity by courts which hold this doctrine, in cases analogous to the one here presented, may be seen in *Lane* v. *Stacy*, 8 Allen, 41.

To say nothing of the insolvency of the estates both of the principal and co-surety in the present case, it is obviously desirable that the rights of the complainants in the fund created by the assignment of the life policy should be ascertained by a process in equity, in which all the parties interested in that fund may be before the court, and perhaps a multiplicity of suits avoided. It may well be that these respondents are stimulated to defend here by their accountability in various contingencies to the children of George F. Adams. Both the valid completion and the effect of the assignment from him to his father, were in controversy here. It would be little to the credit of the administration of justice if, when in a suit at law one or the other or both of these respondents had been held liable to the complainants as for money had and received, another jury at the suit of the children should find that there was no valid delivery of the assignment, and consequently hold them accountable to the children also. Manifestly it is a case where the rights of all concerned should be ascertained in one process in equity. This is not a case where the proceedings at law in the suit between the two respondents which they have offered in evidence would bar the rights of the complainants. It only serves to illustrate the necessity for a resort to the equity jurisdiction, in which alone

the rights of all parties interested may be finally determined. As evidence here it serves no purpose unless it be to show that another tribunal reached the same conclusion to which we are brought, upon the question of the completion of the assignment by delivery.

But by some unaccountable oversight, the children of George F. Adams have not been made parties to this suit. Their guardian gives testimony in behalf of the respondents, and it may be true that the defence is conducted wholly in their interest and behalf, but we can have no judicial knowledge of that fact. Courts will carefully guard the rights of infants interested in all such processes. *Stinson* v. *Pickering*, 70 Maine, 273; *Tucker* v. *Bean*, 65 Maine, 352. This case is in no condition for the entry of a decree until the minor children of the assignor have been regularly made parties and have had an opportunity to to be heard if they have anything further to allege and prove.

The bill also needs amendment in the prayer for a decree, so far as the executrix is concerned. It asks for a decree that Joseph Adams held the assignment in trust for the benefit and security of his co-sureties, the complainants, as well as himself, but is silent as to the only party who can now legally represent Joseph Adams in the premises.

> *Remanded to nisi prius for further proceedings in conformity herewith.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.