HARRIET HOOVER, Appellee, v. J. J. MOWRER et al., Appellees, and JAMES HOOVER et al., Appellants.

1. **Sureties:** CONTRIBUTION: ACCOUNTING. Where one of several co-sureties has received security against the common liability, and his co-sureties have been compelled to pay the debt of the principal, the surety holding the security may be held to an accounting by his co-sureties for the fund realized therefrom.

2. ———: ———: ———. Upon such accounting the surety is entitled to credit for attorney fees paid in defending his title to the property held as security, and for the payment of prior liens thereon, but he is not entitled to payment out of such fund of an indebtedness due from the principal to him individually.

*Appeal from Buchanan District Court.*—HON. C. F. COUCH, Judge.

TUESDAY, OCTOBER 27, 1891.

THE action was brought at law on a promissory note, but transferred to equity. A cross bill was filed by the defendants, Hoover & Hoover, against the defendants, Craig & Adams, which was dismissed. A judgment on the note was rendered against all the defendants. An appeal was taken by Hoover & Hoover from the order dismissing the cross bill. · No appeal was taken from the judgment on the note. *Reversed.*

*Chas. E. Ransier* and *H. W. Holman,* for appellants.

*E. E. Hasner,* for appellees.

BECK, C. J.—I. The note upon which the suit was originally brought was executed by J. J. Mowrer and

his wife, Sarah Mowrer, to R. W. Adams, E. O. Craig, C. Hoover, Sr., and James Hoover, and by them indorsed to the plaintiff. The purpose of the note was to raise money for the makers upon the credit of the payees and indorsers, they becoming security for the makers. The note was the renewal of prior notes made by the parties, and a continuance in fact of the prior transaction. The Hoovers filed a cross bill alleging that since the commencement of the action they had paid the note to the holder; that the Mowrers are insolvent; and that, for the purpose of protecting all the sureties, they executed to Craig & Adams a mortgage upon certain town lots and a stock of general merchandise owned by them, and they took possession of the goods, and converted them to their own use. Upon this cross bill the Hoovers pray that Craig & Adams be required to account for the value of the goods, and that the mortgage inure to the benefit of all the sureties, and that to that end, and for the purpose of protecting all, proper judgment be entered in their favor for one half the value of the goods. Craig & Adams deny that they are co-sureties of the Hoovers, and are liable to share with them the proceeds of the mortgaged property, and apply any part thereof to discharge their liability on the note.

II. We are first required to determine whether Craig & Adams may appropriate the proceeds of the mortgaged property to their exclusive benefit, or whether the mortgage should be regarded as security for all of the indorsers of the note. Counsel for the appellees state quite correctly, we think, the rule of law, "that securities obtained by one surety inure to the benefit of all." But he limits the application of the rule to cases where the securities have been obtained after all the sureties have become liable, and without any agreement to that effect before they become liable. We think these conditions alone do not limit the rule, and that its applica-

1. SURETIES: contribution: accounting.

tion extends to all cases where a surety attempts, by fraud or unfair dealings, to obtain advantage over his co-surety. The authorities cited by counsel we think do not support his position. The rule exists for the protection of the sureties, and not for the good of the creditors or the principal debtor. By the contract of sureties, they became severally bound for the debt of the principal. But it is plain that each should contribute equally in case they are called upon to pay the debt. One cannot in any way escape the burden while his co-surety is not relieved. When they enter into the contract, they do so subject to that equitable rule, which becomes, as it were, a contract between them. Each surety is authorized to rely upon this rule to protect himself from imposition and fraud which his co-surety and principal might practice upon him. The principal, by indemnifying one of the sureties, would relieve him of the burden of the suretyship which the other still carried. This would be unfair and inequitable. In case it is done with the knowledge and consent of the other surety, it would thereby be relieved of objection, for the surety could not complain of that to which he assents. And when sureties do not become bound at the same time or by the same contract, as when additional or further security is demanded, and another surety becomes bound in response to such demand, the sureties can doubtless stipulate for indemnity; for, by so doing, they do not prejudice the prior or subsequent surety, whose burden is not affected by the indemnity, and who, as he did not become bound by the same contract with the other surety, cannot claim equality with him. In our opinion, when several sureties become bound by the same instrument, one cannot arrange with the principal for indemnity for himself without the knowledge and assent of the others. In the case before us, the sureties became bound by the same instrument, and no assent was given by the Hoovers that Craig & Adams should obtain indemnity

by the mortgage. Neither did the Hoovers have knowledge as to the indemnity obtained by Craig & Adams. In our opinion, the proceeds of the security acquired by them must be held for the benefit of all the sureties. The district court erred in dismissing the cross bill.

III. It appears from the evidence that Craig & Adams realized eleven hundred and twenty-six dollars and forty-two cents out of the goods. They paid for rent, clerk hire and other expenses, which are not disputed by counsel on either side, one hundred and fifty-eight dollars and seventy-five cents. They also paid fifty dollars attorneys' fees in defending against a garnishment proceeding to charge them for the mortgaged property. As these fees were expended in protecting the property which created the fund now in question, they ought to be paid out of that fund. A mortgage on the goods to Cook, amounting to two hundred and eighty-six dollars and eighty-five cents was paid by Craig & Adams. It was executed by J. J. Mowrer, and not by his wife, to whom the goods had been transferred, and who executed the mortgage to Craig & Adams. Counsel for the Hoovers insist that the mortgage did not bind the property, and, therefore, should not have been paid. But, as J. J. Mowrer was in possession of the goods and conducting the store as his own, it is hardly probable that his wife could successfully set up a claim against the mortgage to Cook. It is not shown that at the time there was any lien against the property superior to the mortgage to Cook. We think Craig & Adams should have credit for the amount paid upon the mortgage,—two hundred and eighty-six dollars and eighty-five cents. This, added to the other expenditures approved, gives four hundred and sixty dollars and sixty cents, the sum to be allowed them. They claim that they should be allowed two hundred and two dollars on account of a note on which Adams was

surety, which he paid, and seventy-five dollars owed directly by Mowrer to Adams. The mortgage taken by Craig & Adams operated for the benefit of all the sureties. They ought not to be permitted to lessen the funds realized from the mortgage by appropriating it to their individual claims. They stand as trustees for all the sureties, and are required to use that trust fund for the benefit of the sureties alone. The goods realized eleven hundred and twenty-six dollars and forty-two cents; expenses and Cook mortgage, four hundred and sixty-five dollars and eighty-five cents; leaving six hundred and sixty dollars and fifty-seven cents to be paid for benefit of sureties. One half of this sum the Hoovers are entitled to recover, for which a decree and judgment will be entered in this court.

The Hoovers recovered judgment against Craig & Adams in this action for eight hundred and forty-seven dollars and ninety-six cents. No. complaint is made thereof, and no appeal is taken therefrom; it is not for consideration in this case. The decree dismissing the cross bill is REVERSED.