## MAKEEVER ET AL. *v.* BARKER ET AL.

[No. 12,403.   Filed December 9, 1926.]

1. APPEAL.—Mere abstract statements of law in appellant's brief, not applied to specific errors assigned, do not present any question for review.   p. 423.

2. APPEAL.—*When overruling a demurrer is unimportant.*— Where there is a special finding of facts and conclusions of law are stated thereon, any error in overruling a demurrer to a pleading is harmless if the facts found are within the issues and the conclusions of law are correctly stated.   p. 423.

3. PLEADING.—*Variance held not material.*—Where the complaint stated a cause of action on a bond and the evidence showed that there were two bonds, it appearing that they were duplicates, together containing the signatures of all stockholders to an agreement securing the directors of a corporation against loss, there was not a material variance, as §418 Burns 1926 declares that a variance is not material unless it misleads the adverse party.   p. 423.

4. REFORMATION OF INSTRUMENTS.—*Bond given by stockholders to secure directors of corporation against loss by signing corporation's obligations may be reformed to include director omitted by mistake.*—An instrument in the form of a bond given by the stockholders of a corporation intended to secure the directors against loss by reason of their becoming sureties on the obligations of the corporation may be reformed to include one of the directors omitted therefrom by mistake.   p. 424.

5. EQUITY.—*Equity will disregard mere forms to reach the result intended.*—A court of equity will look through mere forms to see the equitable result to be accomplished by the action taken which is evidenced by the forms.   p. 424.

6. PRINCIPAL AND SURETY.—*Cosureties are entitled to participate in benefits of securities received by one of them.*—Cosureties are, in general, entitled to participate equally in all the benefits received by any one or more of their number from the principal or any one acting in his behalf and in any security received from the principal or any one acting for him.   p. 424.

7. GAMING.—*"Hedging" transactions on board of trade by elevator company not necessarily illegal.*—A court's finding that an elevator company's dealings with a board of trade were not gambling was not error where the evidence showed dealings in "futures" that could have been merely "hedging," as such transactions have been recognized as legal (*Sawers Grain Co.* v. *Teagarden*, 84 Ind. App. 522, distinguished).   p. 425.

8. INDEMNITY.—*Recovery on bond securing corporate directors against loss by signing company's obligations held not excessive.*

—In an action against the obligors on a bond executed to secure the directors of a corporation against loss by becoming sureties for the corporation's debts, a finding in favor of the plaintiffs for the aggregate amount of such losses was not excessive where the judgment provided that each of the directors should credit on the judgment his *pro rata* share of the obligation. p. 426.

From Jasper Circuit Court; *George A. Williams,* Judge.

Suit by Martin G. Barker and others against Jay E. Makeever and others to reform and enforce a bond. From a judgment for plaintiffs, the defendants appeal. *Affirmed.* By the court in banc.

*Fraser & Isham, Milton E. Graves* and *Abraham Halleck,* for appellants.

*Hanley & Hanley,* for appellees.

NICHOLS, J.—Action by appellees against appellants to reform, on the grounds of a mutual mistake, and to enforce a bond.

The complaint was in two paragraphs. The court sustained a demurrer to the first paragraph and overruled it as to the second. Appellants filed separate answers in denial, a plea of *non est factum,* and affirmative paragraphs charging fraud.

Upon proper request, the court found the facts specially and stated conclusions of law thereon, which facts, as specially found, briefly stated, are as follows: On April 27, 1920, appellees and appellants and other farmers in the neighborhood of the town of Mt. Ayr, Newton county, Indiana, organized a corporation for the purpose of doing such business as is carried on by an elevator company, under the name of "The Farmers Co-operative Company of Mount Ayr, Mount Ayr, Indiana." Stock was subscribed thereto by appellees and appellants and others living in the vicinity of Mt. Ayr. At said time, the stockholders at their first meeting in

Mt. Ayr, elected appellees, except appellee Battleday, as directors for the ensuing year, and thereupon at a meeting of the directors, they elected, for the ensuing year, appellee Barker, President, Blankenbaker, Vice President, Roberts, Secretary, and Brunton, Treasurer.

At a regular meeting of the directors on June 26, 1920, J. M. Roe was employed as manager and Walter B. Roe as assistant manager, for said company, their terms of employment to begin on July 1, 1920.

On July 1, 1920, the said board of directors, for and on behalf of said company, purchased from one Edwin Harris an elevator for $20,000 and the machinery, equipment and stock contained therein for the additional sum of $8,000.

As a part of the purchase price for said elevator, said company executed a promissory note in the principal sum of $15,000 and each of the directors of the company, including appellee Lyons, indorsed the said note as surety thereon in order to consummate the purchase of the elevator.

The business of said company was such during the year 1920 and 1921, prior to July 1, 1921, that it required the borrowing of large sums of money and by reason of the necessity of said business during the time aforesaid, the company became indebted to various persons and corporations, and in order to secure funds to carry on the business, it was necessary for the directors, including appellee Lyons, to indorse certain promissory notes as surety for said company, in addition to said note to Edwin Harris, and prior to July 1, 1921, they indorsed one note for $2,000, dated September 4, 1920, to Wm. T. Shaw, and one note for $1,500, dated March 15, 1921, to Wm. H. Lee.

The first annual meeting of the stockholders of said corporation was held in Mt. Ayr on June 27, 1921.

Prior thereto, the directors caused an audit to be made

of the books and the business of the company and the report of the auditor, as corrected, disclosed that the total losses of the business for the year were $9,350.56. This condition was discussed by the stockholders present at the meeting. Some of the directors stated to the stockholders present that they, the directors, would not continue with the business of said company unless some arrangements were made whereby the stockholders would protect them against loss by reason of the notes of the company which had been indorsed by the directors or by reason of the notes which it might be necessary for the directors to indorse in the future, and that unless some such arrangements were made, the directors would close out the business of the company. After discussion, it was agreed by the stockholders and directors present that a bond should be executed by the stockholders which should indemnify the directors against loss by reason of notes of the company which the directors had indorsed or might indorse, and that such bond should be for the benefit of all parties who, while acting as directors of the company, had or might indorse notes of the company. At this meeting, appellee Battleday was elected as a director instead of appellee Lyons. Thereupon and thereafter, the bond in suit was prepared and executed in the sum of $20,000 to appellees other than Lyons, conditioned that whereas the company from time to time was borrowing certain sums of money from various persons and corporations, for the purpose of carrying on its business, and whereas the directors had signed and would thereafter sign the notes as surety, if the company should well and truly repay all of the notes so indorsed by the above named directors, as the said notes became due and save the said above named directors from all losses and expenses on account of having so indorsed said notes of the company, then the obligation should be null and void, other-

wise to remain in full force and effect and virtue in law for one year or until said loans had been paid, or another bond accepted by the directors, or they were relieved of their liability as such indorsers.

Said bond was not made in the form intended in that the name of appellee Lyons was not included therein as one of the obligees.

The directors, relying upon the provisions of the said bond, continued the business of the company for some time thereafter, and appellees other than Lyons, after July 1, 1921, executed four promissory notes as directors, and for the benefit of the company, in the total sum of $2,546.44.

These notes and the three mentioned above were all executed by appellees as sureties for the sole benefit of said Farmers Co-operative Company as principal.

On March 18, 1922, by order of the board of directors, a voluntary assignment of the property of the company was made under the statutes to a trustee who sold and converted into cash all of the assets of the company and distributed the proceeds derived therefrom to the creditors, thereby paying about forty per cent. of the indebtedness of the company. Appellees were compelled to pay as sureties a total of $11,621, for which amount, less $3,331.56 received from the trustee, this action was commenced. There are findings as to the amount paid by each appellee or group of appellees, as to the insolvency of part of the signers of the bond, as to the good faith of appellees, and that certain dealings with the Chicago Board of Trade were not gambling. Conclusions of law were stated in favor of appellees, that the bond should be reformed by including appellee Lyons as an obligee and that appellees should recover a total sum of $8,289.48 and interest from May 9, 1923. Judgment was rendered accordingly. The errors assigned are the court's action in overruling the demurrer

to the complaint, in overruling appellants' motion for a new trial, in overruling appellants' motion to modify the judgment, and error in the conclusions of law.

So far as appellants' points and authorities in their brief are mere abstract statements of law, and are not applied to the alleged errors assigned, no question is presented for our consideration. *Board, etc., v. Ryan* (1915), 183 Ind. 664, 110 N. E. 58. There being a special finding of facts and conclusions of law thereon, we do not need to give consideration to alleged error in overruling appellants' demurrer to the second paragraph of complaint, being the paragraph on which the case was tried. It is well settled that if the facts found are within the issues, and the conclusions of law are correctly stated, overruling a demurrer to the complaint is harmless. *Sawers Grain Co.* v. *Goodwin* (1925), 83 Ind. App. 556, 146 N. E. 837; *Woodward* v. *Mitchell* (1894), 140 Ind. 406, 39 N. E. 437.

Appellants contend that there was a fatal variance between the complaint and the special findings in that the complaint was based upon one bond while it appears by the findings that there were two bonds involved. These bonds, as found, were exactly alike in form and substance, and were circulated at the same time, about one-half of appellants signing one duplicate, and about one-half signing the other. Appellants were not, and could not have been harmed by such a variance as this. It is expressly provided by §418 Burns 1926, §400 Burns 1914, that no variance between the pleading and the proof is to be deemed material, unless it actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits, which fact must be proved to the satisfaction of the court. There is no claim of prejudice here.

The substantial question here involved is as to the right of the court, in equity, to permit a reformation

of the bond in suit by inserting therein the name
4-6.    of appellee Lyons as obligee under a plea of mu-
tual mistake in its preparation, and then enforc-
ing it as to all appellees, including appellee Lyons, and
as to whether appellants were harmed by such action.
There is much contention as to the admissibility of evi-
dence of what was said and done at the annual meet-
ing of the stockholders at which the propriety of
executing the bond was discussed, but we attach but lit-
tle importance to the proceedings at this meeting, look-
ing rather to the contents of the bond itself for the
intention of the parties thereto.    It is apparent from
the bond itself that it was the intention of the parties
that the directors of the company who had theretofore
signed, and those who would thereafter sign, the com-
pany's notes as sureties should be indemnified by the
bond, and this would, of course, include appellee Lyons.
It is evident that upon this theory the court found that
there was a mutual mistake in the omission of the name
of appellee Lyons, and ordered a reformation of the bond
to include his name as an obligee, thereby permitting
him to recover direct from appellants that which he
might have recovered by indirection.    This was but the
application of a form of remedy in order that the sub-
stance thereof might be accomplished.    But a court of
equity will always look through mere forms to the end
that it may see the equitable end to be accomplished
thereby, which in this case was a complete reimburse-
ment of the directors for moneys which they had been
compelled to pay as sureties for the company.    Had
there been no findings of mutual mistake and of the in-
tention of the parties upon which to base a conclusion
that there was a right of reformation of the bond, the
judgment against appellants must have been for the
same amount as it is.    The condition of the bond in suit
is that the company shall pay the notes indorsed by

the directors, and save them from all losses.   Under
such a condition, it can hardly be questioned that ap-
pellees other than Lyons were entitled to be fully re-
imbursed for any expenditure by reason of their
suretyship.   But when Lyons paid any part of the
surety debt as a surety, he was then entitled to partici-
pate in any benefits which his cosureties had received.
It is well established that cosureties are in general en-
titled to participate equally in all the benefits received
by any one or more of their number from the principal,
or any one acting in his behalf, and in any security re-
ceived from the principal or any one acting for him.   32
Cyc 291; *Labbe* v. *Bernard* (1907), 196 Mass. 551, 82
N. E. 688; *Hoover* v. *Mowrer* (1891), 84 Iowa 43, 50
N. W. 62; *Scribner* v. *Adams* (1882), 73 Me. 541; *Bach-
eldor* v. *Fisk* (1821), 17 Mass. 464; *Paulin* v. *Kaighn*
(1861), 29 N. J. Law 480; *Shaeffer* v. *Clendenin* (1882),
100 Pa. St. 565; *Whiteman* v. *Harriman* (1882), 85 Ind.
49.   With this right of action in appellee Lyons against
his cosureties, it follows that they could not be saved
from all losses by reason of their suretyship until they
were fully reimbursed for the money they had been com-
pelled to pay, including the amount due from them to
appellee Lyons by way of contribution.   This means, of
course, that to save appellees other than Lyons from
all losses, appellants must pay them the full amount
of the surety debt, when they in turn can reimburse
Lyons without loss to themselves.   This being the law,
it can make no difference to appellants whether they
pay the amount due Lyons to him through his co-
sureties, or to him direct as a co-obligee.   Appellants
were not harmed by the form of the decree.

   We cannot say from the court's finding as to the
      dealings of the company in "futures," in view of
   7. the fact that the court has found that such
      transactions were not gambling, that they were

more than "hedging," which has been recognized as a legal transaction. *Board of Trade* v. *Christie Grain, etc., Co.* (1905), 198 U. S. 236, 49 L. Ed. 1031. The findings do not disclose a condition such as was found in the case of *Sawers Grain Co.* v. *Teagarden* (1925), 84 Ind. App. 522, 148 N. E. 205, where millions of bushels of grain were bought and sold, far exceeding the capacity of the elevator.

The amount of the recovery was not too large as contended by appellants, for the reason that express provision is made in the judgment that each of the appellees should credit upon the judgment in his favor his *pro rata* share of the obligation of the bond which he had signed. This provision is so worded as to include appellee Lyons who did not sign the bond, but he has assigned no cross-error.

Of the many questions presented by appellants, we have considered those which we deem substantial. We hold that a right result was reached, and that there is no reversible error.

Judgment affirmed.