## JOHNSON ET AL., EXECUTORS, *v.* SHERWOOD.

[No. 5,044. Filed January 26, 1905.]

1. PLEADING.—*Inconsistent Defenses.*—*Counterclaim.*—*Striking Out.* —Where defendant files two inconsistent paragraphs of counterclaim, a motion to strike out one should be overruled, since by statute (§350 Burns 1901, §347 R. S. 1881) "the defendant may set forth in his answer as many grounds of defense, counterclaim and set-off, whether legal or equitable, as he shall have." p. 503.

2. SAME.—*Answer.*—*Counterclaim.*—The facts pleaded and not the name given to the pleading controls as to what the pleading is. p. 504.

3. SAME.—*Counterclaim.*—A pleading can not be both an answer and a counterclaim. A counterclaim presupposes affirmative relief, and may be good on demurrer, whether it be a full defense to the action or not, and it must state facts showing a liability of the plaintiff to defendant in respect to the transaction set out in the complaint. p. 504.

4. SAME. — *Complaint.* — *Reformation.* — In an action to reform a written instrument three things must appear, (1) mutual mistake,

Johnson *v.* Sherwood.

(2) the agreement as actually made, and (3) the agreement which the parties intended to make. p. 505.

5.   DEEDS.—*Mortgages.—Bills and Notes.—Reformation.*—Where defendant executed a deed to plaintiff for a certain lot, and in the description thereof an easement of a cartway should have been included across the end of the lot, but by mistake the easement was described as along but not on such lot, the plaintiffs knowing that such easement was on the lot; and the mortgage given as security for purchase money contained the same mistake; and the note made was intended to include attorneys' fees, but one of the plaintiffs wrote such note, so as to make it include the payment of attorneys' fees on a condition, such deed, mortgage and note should be reformed to show the real intention. p. 506.

6.   REFORMATION OF INSTRUMENTS.—*Incidental Relief.—Demand.*— Where the reformation of a deed, note and mortgage was incidental to a foreclosure of such mortgage, a demand was not necessary before the filing of suit for foreclosure. p. 507.

7.   DEEDS.—*Reformation.—Mutual Mistake in Land Included in Description.*—A deed may 'be reformed, although both parties intended that it should be expressed in the words used, if both parties understood the boundaries to describe a smaller parcel identified by them than was described in fact. p. 507.

8.   BILLS AND NOTES.—*Fraud.—Reformation.*—Where the maker of a note wrote the same, and it was the intention of the parties for it to include attorneys' fees, but such maker, being a lawyer, interlined such payment with a condition, thus invalidating such provision, such action is fraudulent as to the payee, and equity will relieve by striking out such condition. p. 507.

9.   TRIAL.—*Special Findings.—Conclusions of Law.—Exceptions.*— Where the special findings show the facts to be as set out in a pleading, an exception to the conclusions of law thereon presents the same question as the demurrer to such pleading. p. 509.

10.   SAME.—*Note.—Reformation.—Fraud.—Failure to Find.*—Where a reformation of a note is sought on the ground of fraud in failing to include attorneys' fees, a failure to find fraud will not warrant a decree of reformation, but if the mortgage securing such note does provide for the payment of attorneys' fees, the error in decreeing a reformation of such note is not reversible. p. 509.

From Elkhart Circuit Court; *Joseph D. Ferrall,* Judge.

Action by Jeanette G. Johnson and another, executors, against Mary S. Sherwood. From a decree for defendant on her counter-claim, plaintiffs appeal. *Affirmed.*

*James D. Osborne,* for appellants.

*John M. Van Fleet* and *Vernon W. Van Fleet,* for appellee.

MYERS, J.—This cause might, and, strictly speaking, should, be affirmed for failure of appellant to file a brief complying with rule twenty-two of the Supreme and this Court. Appellee insists upon an affirmance of the judgment for that cause. This rule, adopted in pursuance of law, enters into and becomes a part of the law governing litigants in the presentation of their causes of action on appeal, and should not be ignored or disregarded. *Smith* v. *State, ex rel.* (1894), 140 Ind. 340. But, as appellants have made some attempt to comply with the rule, we have concluded not to invoke it, and will proceed to pass upon the merits of the case.

This was an action begun in the Elkhart Circuit Court by appellants and others to cancel a note and mortgage on certain real estate in the city of Elkhart on account of an alleged breach of warranty in a deed from appellee to appellants' decedents. Briefly, the complaint avers that appellee Mary S. Sherwood and her husband, Bradford D. Sherwood, conveyed by warranty deed to appellants' decedents a parcel of land described in the deed, which deed is made an exhibit and part of the complaint; that the land consisted of a business lot in the city of Elkhart, twenty-six fet wide, fronting on Main street, and eighty-two and one-half feet long east and west, fronting on Lexington avenue, formerly Pigeon street; that there was then and is yet an encumbrance on said lot, consisting of a permanent and perpetual easement and right of way twelve and one-half feet wide over and across the east end thereof, being a cartway or roadway for the use and benefit of the proprietors of other lots north thereof, and to allow them ingress and egress to and from the rear ends of their said lots; that, because of such cartway and easement, the grantees in said deed, and their successors and assigns, are and ever will be

deprived of the use and possession of twelve and one-half feet in width off of the east end of said lot, and to that extent the seizin and title to the land described in said deed was not conveyed thereby, and there was and is a breach of the warranty in said deed. Other allegations appear in the complaint as to the execution of a note and mortgage to secure the balance of unpaid purchase money; the complaint closing with a prayer for damages, and that such damages be applied to the extinguishment of the note evidencing the balance of unpaid purchase money, and that appellee be ordered to release of record the mortgage securing the same. Following the description in question in the deed appears the following, to wit: "Together with the right of way for a cartway across said lot No. 12, and also lot No. 11 of said original plat eighty-two and one-half feet east of the west line of said lots No. 11 and No. 12."

To this complaint the appellee files an answer in general denial, also two paragraphs of counterclaim. The material averments of the first being that, since the execution of the deed aforesaid, her husband, Bradford D. Sherwood, departed this life, leaving no interest or right in said real estate to any other person than this appellee. She admits the execution of the deed, a copy of which is filed with the complaint, but says: "That at the time of its execution she was the owner of a parcel of land described as follows: 'Commencing at the southwest corner of lot No. 12 in the original plat of the town (now city) of Elkhart; * * * thence north, with the east line of Main street of said town, twenty-six feet, to the southwest corner of the brick building owned by John Dalton; * * * thence east, parallel with the south line of said lot No. 12, eighty-two and one-half feet; thence south to the south line of said lot No. 12; thence west along said south line to the place of beginning; together with the right of way across said lot No. 12 and also lot No. 11 of said original plat to an open cartway within five rods of Main street;' that the above-described

tract of land was subject to said cartway, which extended across its east end, which cartway was an easement in favor of all the owners of said lots No. 11 and No. 12; that the aforesaid tract of land was occupied by a two-story frame building, about twenty-six feet wide, north and south, extending east from Main street along Pigeon street seventy-five and one-half feet, to an open and visible cartway seven feet wide, which frame building and cartway covered eighty-two and one-half feet of land owned by appellee; that joining said eighty-two and one-half feet of land on the east there was, and still is, a two-story brick building, owned by another person; that the original plaintiffs, Guy C. Johnson and Ruel M. Johnson, personally made an examination of said premises before purchasing, and saw said open cartway across the east end thereof between the two buildings, and well knew that this defendant and counterclaimant simply owned a tract of land in the southwest corner of said lot No. 12, twenty-six feet wide on Main street and eighty-two and one-half feet long on Pigeon street, across the east end of which was said open cartway, which was an easement, as they also well knew, in favor of all the owners of said lots No. 11 and No. 12; that with that knowledge existing on the part of said original plaintiffs [appellants' decedents] and this defendant and counterclaimant, it was agreed by and between them that she should convey to the original plaintiffs said land, subject to said easement, and should also convey to them her right to use said easement across the other parts of said lots No. 11 and No. 12, for the sum of $6,000; that by the mutual mistake of the parties and the scrivener who wrote the deed the premises were described as follows." Here follows a description of the land as set forth in the deed.

The appellee further avers "that all the parties supposed and believed that the description inserted in said deed properly and truly described her interest in said land and in said cartway, which it did not do. She further says that,

as a part of the same transaction in which said deed was executed, said original plaintiffs, in order to secure the payment of $4,000 of the purchase price of said premises, executed to her a note secured by a mortgage—being the same note and mortgage mentioned in the amended complaint—which note, secured by such mortgage, was due and unpaid." Here follows a copy of the mortgage, in the ordinary statutory form, containing a description of the real estate as described in the exhibit to the complaint. Such mortgage also includes a brief description of the note, and also of itself provides for the payment of attorneys' fees. Then follows a copy of said $4,000 note, mentioned as an exhibit in the complaint. The note is in the ordinary form, but contains this provision: "And payees attorneys' fees, if suit be brought on this note, at such rate for said attorneys' fees as shall be allowed by the court." It is further averred "that, by the same mutual mistake of the parties and the scrivener who wrote the mortgage, the same erroneous description in relation to said cartway that was put into said deed was carried into said mortgage," and she asks, by proper averments, that the deed be reformed, and also the mortgage be reformed to speak the truth, and to cover the real estate as intended by the parties.

It is also averred that one of the grantees in said deed, "Ruel M. Johnson, was then, and for more than twenty-three years then last past had been, an attorney at law at the bar of said court, distinguished and famous for his learning and ability, all of which was well known to her, and that she then had the utmost faith in his ability and integrity, and upon his promise so to write said note that it would include attorneys' fees, as aforesaid, she relied. She says that the said Ruel M. Johnson, acting for himself and Guy C. Johnson, betrayed her confidence, and wrote the said note as it appears above; that in order to throw her off her guard, he took a printed form of note, which had therein the clause 'and payee's attorneys' fees,' without any condi-

tions attached, and which he well knew would enable her to collect her attorneys' fees, and added thereto in writing, so as to make it read, 'and payee's attorneys' fees, if suit be brought on this note, at such rate for said attorneys' fees as shall be allowed by the court;' * * * that he well knew that if he would strike out from said note the clause, 'and payee's attorneys' fees,' she would notice it, and refuse to accept the note, and both of said original plaintiffs well knew that she believed that said note, as executed, provided for her attorneys' fees as aforesaid. She also says that said mortgage was written on a printed blank which contained the clause, 'The mortgagors expressly agree to pay the sums of money above secured, and all the mortgagees attorneys' fees without relief from valuation and appraisement laws,' which said Ruel M. Johnson allowed to remain, but, in describing the said note in said mortgage, he copied therein the clause, 'and payee's attorneys' fees, if suit be brought on said note, at such rate for such attorneys' fees as shall be allowed by the court,' he then well knowing that, upon said expressed condition in said note, the court could not allow anything to the payee on said note for attorneys' fees. She further says that the printed clause providing for attorneys' fees was allowed to remain in order to deceive her, and that it did deceive her, as both the original plaintiffs at the time well knew." Other allegations appear relative to affirmative relief in the way of a foreclosure of the mortgage; the paragraph concluding with a prayer that the deed, mortgage and note be reformed so as to include the actual agreement made and intended by the parties, and by the mutual mistake not inserted in said written instruments, and for a foreclosure of the mortgage, etc.

Briefly stated, appellee's second paragraph of the counterclaim avers that on the 8th day of September, 1890, she was the owner of certain real estate in the city of Elkhart, described as "commencing at the southwest corner of lot No. 12 in the original plat * * * and running thence

north, with the east line of Main street, twenty-six feet, to the southwest corner of a brick building formerly owned by John Dalton; * * * thence east, parallel with the south line of said lot No. 12, eighty-two and one-half feet; thence south to the south line of said lot; thence west on the south line to the place of beginning; together with the right of way across lot No. 11 of said original plat to an open cartway within five rods of Main street;" that the land was subject to the open cartway, which was seven feet wide, extending across said east end, as an easement in favor of all the owners of lots No. 11 and No. 12; that she intended to sell, and supposed she was selling, to said Guy C. Johnson and Ruel M. Johnson the tract of land above described, and subject to the easement of said cartway, and she supposed and believed that they understood the contract of sale the same as she did; that the said Johnsons supposed they were buying of this defendant the tract of land above described, together with the cartway adjoining it on the east; that she did not own the land adjoining her said land on the east, and that the minds of the parties never met, and they never agreed to the same thing; that Ruel M. Johnson, being an attorney, drew the deed, a copy of which is set forth in plaintiff's brief, in which said cartway was fixed to the east of the east line of her said land, as he understood the contract not to be upon and over the east end of her land, as she understood the contract to be; that she never discovered said mistake; nor that the deed did not describe the land that she agreed to sell, as she understood the contract, until after this action was commenced; that said Johnsons agreed to pay $6,000 for said land—$2,000 in cash, and execute to her a note secured by a mortgage upon said premises for $4,000—and that certain payments had been made on said mortgage indebtedness.   (Here follows a statement of the dates and amounts paid on said mortgage.)   That said Johnsons took immediate possession of said real estate, and

have ever since received the rents and profits thereof, which were $550 per year; that they have paid the taxes in the sum of $25 per year.    She brings said note and mortgage into court for cancelation and delivery to the plaintiffs, and hereby offers to release said mortgage from record, and asks that the deed be canceled and annulled, and that it be adjudged that no contract was ever made between the parties for the sale and purchase of said real estate, and that plaintiffs be charged with the rents, and be credited with taxes, repairs and insurance, if any paid, and also with all moneys they have paid on said note and mortgage, with interest thereon at six per cent., and declare the same to be a lien upon the land herein described, and fix a time in which she shall pay the same to plaintiffs.

Appellants moved to strike out the last paragraph of counterclaim, which was by the court overruled.    Appellants thereupon filed a demurrer for want of sufficient facts to each paragraph of the counterclaim, which demurrer was overruled.    Appellants answered each counterclaim by general denial, the cause was submitted to the court for trial, and, by request of each of the parties, special findings of fact were found by the court, and, in so far as they are material to this decision, are as follows:

"(2)    That on the 8th day of September, 1890, the defendant Mary S. Sherwood was the owner in fee simple of the following described real estate in Elkhart county, in the State of Indiana, to wit:    Commencing at the southwest corner of lot No. 12 in the original plat of the town (now city) of Elkhart, as the same is designated upon the original plat of said town, and duly recorded in the recorder's office of said county; and running thence north, with the east line of Main street of said town, twenty-six feet, to the southwest corner of a brick building owned by John Dalton; thence east, parallel with the south line of said lot No. 12; thence south to the south line of said lot No. 12; thence west along the south line of said lot No. 12 to the

place of beginning; together with the right of way across said lot No. 12 and also lot No. 11 to an open cartway within five rods of Main street; also the above described tract of land subject to said open cartway which extended across its east end, which cartway was an easement in favor of all the owners of said lots No. 11 and No. 12.

"(3) That for several days prior to September 8, 1890, the original plaintiffs, Guy C. Johnson and Ruel M. Johnson, had been negotiating with the defendant Mary S. Sherwood for the purchase of said tract of land, which had a frontage of twenty-six feet on Main street and a depth of eighty-two and one-half feet along Pigeon street; that said land was then occupied by a two story frame building, about twenty-five feet wide, extending from Main street along Pigeon street seventy-five and one-half feet; that at the east line of said land, eighty-two and one-half feet east of Main street, was a two-story brick building, fronting south on Pigeon street, and extending north along the east line of said land for its entire length, and still farther to the north, which two-story brick building was owned by another person; that between the east end of the building on said land owned by Mary S. Sherwood and said brick building, there was an open and visible cartway seven feet wide, extending from Pigeon street north across the east end of said tract of land so owned by said Mary S. Sherwood, and also across the remainder of lot No. 12, and also across lot No. 11, adjacent thereto on the north; that said cartway, for its entire length north of the building so owned by the said Mary S. Sherwood, was twelve and one-half feet wide; that said cartway was originally twelve and one-half feet wide for its entire length, but that in the year 1874 the then owner of the land above described as owned by the defendant Mary S. Sherwood extended his two-story frame building five and one-half feet into said cartway, leaving it but seven feet wide, in which condition it remained from that time until April, 1903, when said building was torn away; that the

original plaintiffs, Guy C. Johnson and Ruel M. Johnson, during the time they were negotiating with the defendant Mary S. Sherwood for the purchase of said premises, inspected them, and saw said open cartway and said buildings, and knew that the land so owned by the said Mary S. Sherwood only extended east to said brick building; that they saw said open cartway, and knew it was the cartway mentioned in the deed which Mary S. Sherwood afterwards executed to them; that it was the intention of the said Mary S. Sherwood to sell the land which she actually owned, subject to the easement of said cartway, and to convey to the original plaintiffs the right to use the said cartway along with the other owners of said lots No. 11 and No. 12; that it was the understanding of the original plaintiffs that they were purchasing of the defendant Mary S. Sherwood the land which she actually owned, subject to the said cartway, together with the privilege of using said cartway along with the other owners of said lots No. 11 and No. 12.

"(4)    That on the 8th day of September, 1890, the parties came to an agreement in regard to the sale and purchase of said land, which agreement was that said Mary S. Sherwood, her husband, Bradford D. Sherwood, joining, should convey by warranty deed to the original plaintiffs, for the sum of $6,000, said real estate, subject to said cartway, and with the privilege of using said cartway along with the other owners of said lots No. 11 and No. 12; that, in order to carry out said agreement, the deed upon which the amended complaint is based and the note and mortgage set up in the amended counterclaim of Mary S. Sherwood were executed; that the original plaintiff Ruel M. Johnson, being a lawyer, offered to draw up the papers, which offer was accepted, and he did draw them up; that the language used by him did not express their real intentions and agreement; that all the parties understood the meaning of the language used, but were all mutually mistaken in supposing and believing that that language correctly described the premises

to be conveyed, and the rights of the parties therein; that said deed and mortgage, in order to have expressed the true contract of the parties, ought to have conveyed a parcel of land twenty-six feet by eighty-two and one-half feet, as described in said deed; and then ought to have added: 'Together with the right of way across said lot No. 12 and also lot No. 11 of an open cartway within five rods of Main street; also subject to said cartway across the above-described tract.'

"(5) That it was the intention of the original plaintiffs to execute a note to said Mary S. Sherwood, and her intention to receive a note that would enable her to collect attorneys' fees; that there was no mistake in drawing said mortgage in regard to amount, time or attorneys' fees.

"(6) That there is now due of principal and interest on said note and mortgage the sum of $3,054, and that a reasonable fee for the attorneys of said Mary S. Sherwood is $500, making a total of $3,554."

Upon such findings of fact the court announced the following conclusions of law:

"(1) That the defendant Mary S. Sherwood is entitled to have said deed, note and mortgage reformed, as prayed by her in her amended counterclaim, and that she is entitled to have said mortgage, as thus reformed, foreclosed, as against all the parties to this action, for the sum of $3,554, and that she is entitled to a personal judgment for said amount against the personal representatives, respectively, of said Guy C. Johnson and Ruel M. Johnson, the original plaintiffs herein, to be wholly collected from the estate of Ruel M. Johnson, if said estate shall have sufficient assets wherewith to satisfy the same, and, if not, the residue to be collected from the estate of Guy C. Johnson; that the sale on said foreclosure shall be without relief from valuation laws; and that she recover her costs. (2) That the plaintiffs take nothing by their action."

"To which conclusions of law each plaintiff severally at

the time separately excepts severally to each conclusion of law." Thereupon the court enters judgment, correcting and reforming the deed of Mary S. Sherwood to the Johnsons by "striking therefrom said false and erroneous description, and inserting in lieu thereof the true and correct description," which description shows the lot to be twenty-six feet north and south and eighty-two and one-half feet east and west, together with the right of way across lots No. 11 and No. 12, and subject to an open cartway across the east end of the lot so conveyed; also correcting and reforming the mortgage to correspond with the deed as corrected; also correcting and reforming the note in suit by striking therefrom the words "if suit be brought on this note, at such rate for said attorneys' fees as shall be allowed by the court," written with a pen after the clause, "and payee's attorneys' fees;" that appellants take nothing by their action, and that appellee recover by way of foreclosure upon her counterclaim, and upon her note and mortgage therein described as above reformed. Also judgment foreclosing the equity of redemption of all the appellants, and judgment for sale of the land, and that the proceeds arising from such sale be applied, first, to the payment of costs; and, second, to the payment of cross-complainant's debt in the sum found due, including attorneys' fees.

Appellants assign as error in this court: (1) The court erred in overruling appellants' motion to strike out the third paragraph of counterclaim; (2) the court erred in overruling appellants' demurrer to the second paragraph of counterclaim; (3) the court erred in overruling appellants' demurrer to the third paragraph of counterclaim; (4) the court erred in overruling appellants' motion to modify the sixth finding of fact; (5) the court erred in each of its conclusions of law; (6) the court erred in overruling appellants' motion to set aside the decree of foreclosure; (7) the court erred in overruling appellants' motion for a new trial; (8) that appellee's second and third paragraphs of cross-

complaint do not state facts sufficient to constitute a cause of action against appellants, nor a counterclaim or defense to their demand; (9) that appellee's second paragraph of counterclaim does not state facts sufficient to constitute a cause of action against the appellants, nor a counterclaim or defense to their demand; (10) appellee's third paragraph of counterclaim does not state facts sufficient to constitute a cause of action against the appellants, nor a counterclaim or defense to their demand.

This being a term-time appeal, it is not necessary for us to consider the question of notice to the parties of this appeal.

1.   We will consider the errors here presented in the order of their assignment.   As to the first error assigned, appellants earnestly insist that their motion to strike out the third paragraph of counterclaim should have been sustained, because the right alleged and remedy thereby sought were inconsistent with the theory of the second paragraph. In this jurisdiction, and, in fact, in many of the States, it is held that absolutely inconsistent defenses may be set up, and a motion to strike out, or a motion requiring the party to elect on which defense he will stand, will be unavailing. Our civil code provides that a "defendant may set forth in his answer as many grounds of defense, counterclaim and set-off, whether legal or equitable, as he shall have." §350 Burns 1901, §347 R. S. 1881.

In the case of *Ray* v. *Moore* (1900), 24 Ind. App. 480, the court, in speaking of inconsistent defenses, say: "Each defense must be set up in a separate paragraph, and each paragraph must be complete in itself.   [Citing authorities.] Each pleading must stand on its own ground.   The admissions made in one pleading are conclusive as to that pleading, but can not be used as evidence in issues joined in other pleadings."   Citing authorities.   The doctrine as thus enunciated in the case of *Ray* v. *Moore, supra,* is well supported by authority, not only in this State, but by the deci-

sions of many other States. We cite a few authorities supporting the proposition above stated. *Weston* v. *Lumley* (1870), 33 Ind. 486; *Rarey* v. *Lee* (1896), 16 Ind. App. 121; *Societa, etc.,* v. *Sulzer* (1893), 138 N. Y. 468, 34 N. E. 193; *Barr* v. *Hack* (1877), 46 Iowa 308; *Green* v. *Hughitt School Tp.* (1894), 5 S. Dak. 452, 59 N. W. 224; *Siter* v. *Jewett* (1867), 33 Cal. 92; *St. Louis, etc., R. Co.* v. *Whitley* (1890), 77 Tex. 126, 13 S. W. 853; *Reed* v. *Reed* (1885), 93 N. C. 462. In our opinion, the court committed no error in overruling the motion.

2. The decision of the second error assigned, relative to the court's ruling on the demurrer to the second paragraph of answer or counterclaim, must also be against appellants. While we do not commend the form in which the paragraphs of counterclaim are pleaded, yet, governed by the rule adhered to in a long line of cases, it is the substantive facts pleaded, not the name given to a pleading by the pleader, which determines the nature of the cause of action. *Krise* v. *Wilson* (1903), 31 Ind. App. 590. In the case at bar the appellee designates her second and third paragraphs as answers by way of counterclaim, but an examination of the paragraphs indicate clearly the intention of the pleader to aver facts constituting a counterclaim to appellants' action.

3. "A pleading can not perform the office of both an answer and counterclaim." *Indiana, etc., Assn.* v. *Crawley* (1898), 151 Ind. 413; *Rucker* v. *Steelman* (1881), 73 Ind. 396; *Huber Mfg. Co.* v. *Busey* (1896), 16 Ind. App. 410; *Reichert* v. *Krass* (1895), 13 Ind. App. 348. An answer in bar of an action is insufficient on demurrer if it falls short of such purpose. *Breyfogle* v. *Stotsenburg* (1897), 148 Ind. 552; *DeKalb Nat. Bank* v. *Nicely* (1900), 24 Ind. App. 147. A counterclaim is not demurrable if it fail to respond to the entire complaint. *Stotsenburg* v. *Fordice* (1895), 142 Ind. 490. Therefore, the rule is, when the plea states facts showing a liability on the part of the plaintiff to the defendant, disclosing a complete right of action

in his favor against the plaintiff, growing out of the subject-matter alleged in the complaint, it will be treated as a counterclaim, regardless of the name given it by the pleader. *Wabash, etc., Union* v. *James* (1893), 8 Ind. App. 449; *Johnson* v. *Tyler* (1890), 1 Ind. App. 387; *Indiana, etc., Assn.* v. *Crawley* (1898), 151 Ind. 413. The second paragraph of appellee's pleading, styled by the pleader an answer, demands affirmative relief, and avers facts arising out of and connected with plaintiffs' cause of action, and is, properly speaking, a counterclaim, and will be considered, for the purposes of this opinion, as her first paragraph. *Jones* v. *Hathaway* (1881), 77 Ind. 14.

The object of this paragraph is to reform and correct the deed from appellee to appellants' decedents for the real estate mentioned in appellants' complaint, and also to reform and correct a mortgage and note given by appellants' decedents to this appellee on the real estate sought to be conveyed, which mortgage was given to secure the balance of unpaid purchase money, as evidenced by the note described in the mortgage. The grounds for the reformation of the deed and mortgage are based upon mutual mistake of the parties and the scrivener who wrote the deed and mortgage, in describing a cartway or easement over and across the east end of the real estate conveyed, as being east of, and not over and across, the real estate, as they intended and agreed it should be. The appellants insist that the pleading does not "point out with clearness wherein there was a mistake," and for this reason the pleading is demurrable.

4. It has been held by this court that "three things are necessary in a bill to reform a written instrument. It must appear (1) that there was a mutual mistake; (2) the agreement actually made; and (3) that which the parties intended to make." *Phenix Ins. Co.* v. *Rogers* (1894), 11 Ind. App. 72. The rule as stated by the Supreme Court in the case of the *Citizens Nat. Bank* v. *Judy* (1896), 146 Ind. 322, 341, is: "That in an action to reform a written in-

strument the plaintiff must set forth the terms of the orig-
inal agreement, and also the agreement as reduced to writ-
ing, and point out with clearness wherein there was a mis-
take."

5. In our opinion, testing the pleading now under con-
sideration, not by singling out certain specific allegations,
but by a due consideration of all the substantive facts
averred, it plainly and positively appears that appellee and
appellants' decedents were fully and equally acquainted
with the location, amount and title of the real estate bought
and sold, and that there was an easement or cartway over
the east end thereof. It is averred that "it was agreed by
and between them that she should convey to the original
plaintiffs said land, subject to said easement." The clauses
"subject to a mortgage," or "subject to taxes," or "subject
to an easement," are terms so well understood, when used
in connection with the conveyance of land, as to be equiva-
lent to an averment that it was mutually agreed that the
deed should contain a clause describing the reservation. It
is averred that the agreement, as reduced to writing, located
the easement on property not owned by appellee, and across
land at a point covered by a two-story brick building, when,
if the deed had described the location of the easement cor-
rectly and according to the agreement of the parties, the
reservation of the easement in the deed would have been
across the east end of the land conveyed. In our opinion,
it fully appears from the allegations of the pleading that the
deed was drawn with the intention of carrying out the agree-
ment of the parties previously entered into, and was ex-
ecuted under the misapprehension that it really embodied
the agreement, whereas, by mistake or inadvertence of the
scrivener, it did not state the agreement of the parties, and
is therefore such a mistake as equity will correct by reform-
ing the deed. *Adams* v. *Wheeler* (1890), 122 Ind. 251;
*Keister* v. *Myers* (1888), 115 Ind. 312; *Trusdell* v. *Leh-
man* (1890), 47 N. J. Eq. 218, 20 Atl. 391; *Citizens Nat.*

*Bank* v. *Judy, supra,* and cases cited. All that has been said with reference to the reformation of the deed applies with equal force to the mortgage.

6. The reformation of the deed, mortgage and note being incidental to the foreclosure of the mortgage and collection of the debt, no demand was necessary before filing the counterclaim. *Citizens Nat. Bank* v. *Judy, supra; Walls* v. *State, ex rel.* (1895), 140 Ind. 16; *Sparta School Tp.* v. *Mendell* (1894), 138 Ind. 188.

7. In a former appeal of this case to this court (*Sherwood* v. *Johnson* (1902), 28 Ind. App. 277) it was announced by Henley, J., as "settled law that a deed may be reformed, although both parties intended that the description of the land should be expressed in the words actually used, if both parties understood the boundaries to describe a smaller parcel identified by them than was, in fact, identified by the description used." And in support of the counterclaim he said: "This counterclaim stated a cause of action against appellees, and if the court had found the necessary facts, from the evidence adduced, to sustain its material averments, the finding would not be disturbed." Quoting the syllabus in the case of *Goode* v. *Riley* (1891), 153 Mass. 585: "A deed may be reformed, although both parties intended that it should be expressed in the words used, if both parties understood the boundaries to describe a smaller parcel identified by them than was described in fact." And, as supporting the same doctrine, we cite the cases of *Hunt* v. *Rousmaniere* (1828), 1 Pet. 1, 7 L. Ed. 27; *Born* v. *Schrenkeisen* (1888), 110 N. Y. 55, 17 N. E. 339; *Walden* v. *Skinner* (1879), 101 U. S. 577, 25 L. Ed. 963.

8. The averments of this paragraph relative to the reformation of the note are sufficient, as we think, to charge the scrivener who prepared the note with deception and fraud on the appellee, to which deception and fraud equity will extend its interference, and reform and correct the instru-

ment.    In Fetter, Equity, p. 130, note 82, the following apt language is used, which is truly applicable here: "Fraud, in the contemplation of equity, may be said to include properly all acts, omissions or concealment which involve a breach of equitable duty, trust or confidence justly reposed, and are injurious to another; or by which an undue and unconscientious advantage is taken of another." On this subject our own Supreme Court, in the case of the *Citizens Nat. Bank* v. *Judy, supra,* say at page 340: "Equity will reform a written contract between the parties whenever, through mutual mistake, or mistake of one of the parties accompanied by the fraud of the other, it does not, as reduced to writing, correctly express the agreement of the parties." Citing authorities.

The third assignment of error is not discussed by appellants, and the same is thereby waived.    But in any event it clearly appears from the record in this case that all of the rights of counterclaimant as found by the court are based upon her first paragraph, and any ruling of the court below on the third paragraph of answer, or, rather, second paragraph of counterclaim, was in nowise detrimental to appellants.    If the ruling was harmless, appellants have no ground for complaint.    *Insurance Co. of North America* v. *Hegewald* (1904), 161 Ind. 631; *Norton-Reed Stone Co.* v. *Steele* (1903), 32 Ind. App. 48.

As to the fourth assignment of error, appellants contend "that the note and mortgage as set up by appellee show that no attorneys' fees can be collected thereon, and the findings of the court do not show that any mistake therein was made which can be corrected by the court."    And therefore the sixth finding of fact should have been modified "by striking out the following, 'and that a reasonable fee for the attorneys of said Mary S. Sherwood is $500,' and in lieu thereof insert 'that the defendant is not entitled to recover attorneys' fees on the note and mortgage set forth in her said counterclaim.'"    The averments in the first paragraph of

appellee's counterclaim fully authorized the court, had the evidence justified it, in finding facts sufficient to warrant a reformation of the note and mortgage, so that the same would have legally called for attorney's fees.   Therefore, upon the pleadings, the court correctly overruled the motion. The evidence is not in the record, and in its absence we presume it justified the finding.

9.   By the fifth error assigned, appellants assail the conclusions of law as stated by the court on its finding of facts. The facts as found by the court, and heretofore set out in this opinion, are practically the same as averred in the first paragraph of counterclaim with reference to the deed and mortgage.   Therefore, what was said in support of the counterclaim in that regard is applicable here, as errors based upon conclusions of law present the same questions on the special finding of facts as did the demurrer to the counterclaim.   *Indiana & Ohio Live Stock Ins. Co.* v. *Bender* (1904), 32 Ind. App. 287.

10.   The theory of the counterclaim, and upon which appellee sought to reform and correct the note by striking out the condition relative to attorneys' fees, was upon the ground of fraud and deceit on the part of the draftsman of the note; and upon that theory she was bound to recover, if at all.   The special finding of facts fails to disclose such fraud and deception as averred, and therefore the conclusion of law that appellee was entitled to have the note reformed was erroneous, and could not be the basis for a judgment for attorneys' fees.   Having held the counterclaim sufficient, the error here assigned is not well taken as affecting the deed and mortgage, but as to the note it is.   Is this error sufficient to reverse the judgment?   Is the error of such a character as to injure the appellants?   We think not.   It has been held that a special finding is not insufficient when it refers to a bond or mortgage as being "the same mentioned and set out in a complaint," "on the ground that to hold otherwise would be to require a need-

less encumbrance of the record." *Miller* v. *Wayne, etc., Loan Assn.* (1904), 32 Ind. App. 480.

In the case at bar, as part of the fourth finding, we have the following: "That, in order to carry out said agreement, the deed upon which the amended complaint is based, and the note and mortgage set up in the amended counterclaim of Mary S. Sherwood, were executed." Turning to the mortgage as set forth in the amended counterclaim, we find this provision: "And the mortgagors expressly agree to pay the sum of money above secured and all of mortgagee's attorneys' fees without relief from valuation or appraisement laws." In the fifth finding: "That there was no mistake in drawing said mortgage, in regard to amount, time or attorneys' fees." Finding number six: "That there is now due of principal and interest on said note and mortgage the sum of $3,054, and that a reasonable attorneys' fee for the attorneys of said Mary S. Sherwood is $500, making a total of $3,554." Under these facts, the conclusion of law as to attorneys' fees may be sustained. The finding of facts sustaining appellee's counterclaim was a complete defense to appellants' cause of action, and therefore the conclusion of law that appellants take nothing by their action was correct. If we are correct in the above conclusions, the court did not err in overruling appellants' motion to set aside the judgment of foreclosure.

Appellants assign six reasons why a new trial should be granted: "(1) The court erred in admitting certain evidence; (2) that the court erred in overruling the plaintiffs' motion to modify and change its finding of fact; (3) that the court erred in overruling plaintiffs' motion to strike out and reject the third answer and counterclaim filed herein; (4) for error in the assessment of the amount of recovery because the amount is too large; (5) that the decision is not sustained by sufficient evidence; (6) that the decision is contrary to law." Appellants waived the first and fifth reasons. All the other reasons have been fully discussed

and decided adversely to appellant. The eighth, ninth and tenth errors assigned were decided against appellants when we held the first paragraph of appellee's counterclaim sufficient to withstand a demurrer. *Louisville, etc., R. Co.* v. *Ader* (1887), 110 Ind. 376; *Buchanan* v. *Lee* (1879), 69 Ind. 117.

Finding no error in the record authorizing us to reverse the judgment, the same is affirmed.