OPINION OF THE COURT
Renee R. Roth, S.
In this novel reformation proceeding commenced by the executors of the estate of Thomas C. Case, the object is to minimize the estate tax, not in decedent’s own estate but instead in the estate of his widow, Carolyn Case, upon her death.
Mr. Case’s will creates two trusts. One is a preresiduary credit shelter trust; the other is a residuary qualified terminable interest property (QTIP) trust. The provisions of both *700 trusts are the same. The net income is payable to Mrs. Case for life and, upon her death, the remainder interest in each trust is payable one half to named individuals and one half to named charities.
Mr. Case’s estate is thus fully sheltered from estate taxes by either the unified credit or the unlimited marital deduction. Since the credit shelter trust by-passes Mrs. Case’s estate it will not be taxable in her estate. But to the extent that one half of the trust passes to charity, such part of the credit shelter is wasted. The QTIP property, on the other hand, will be includable in the widow’s gross taxable estate (Internal Revenue Code [26 USC] § 2044) and a charitable deduction will be available only to the extent that the property passes to charitable remaindermen (Internal Revenue Code § 2055). It is this inadequate coordination of the couple’s estate plans that decedent’s executors seek to remedy by reformation, thus reducing the estate tax payable upon the termination of the trusts on the death of Mrs. Case. Where, as here, the beneficiaries of the credit shelter and QTIP trusts are identical, the tax savings can be achieved by simply allocating decedent’s unified credit to assets that would otherwise be taxable in the widow’s estate and by qualifying for QTIP treatment those assets that would be sheltered from tax by the charitable deduction. In this manner the executors can maximize the benefit of decedent’s unified credit.
Mr. Case’s executors propose to sever both trusts and qualify those with charitable remainders as QTIPs and those with individual remaindermen as credit shelter trusts. To accomplish this result, they seek to divide the single credit shelter trust into two equal trusts, one (Trust A) will have only charitable remaindermen and the other (Trust B) will have only individual remaindermen. Trust A will qualify for the marital deduction as a QTIP trust in Mr. Case’s estate and for a charitable deduction in Mrs. Case’s estate on her death. Trust B will be fully sheltered as a unified credit trust in Mr. Case’s estate and by-pass Mrs. Case’s estate.
Similarly, the executors propose to divide the residuary QTIP trust into two equal trusts, Trust C and Trust D. Trust C will have only charitable remaindermen and will qualify in Mr. Case’s estate for the marital deduction as a QTIP trust and in Mrs. Case’s eventual estate for the charitable deduction. Trust D will have only individual remaindermen and will be further divided into two unequal parts. One part will be equal to the remaining unified credit and qualify as a credit *701 shelter trust in Mr. Case’s estate and, of course, by-pass Mrs. Case’s estate. The other unequal part will be qualified for the marital deduction as a QTIP in Mr. Case’s estate but will be fully taxable in Mrs. Case’s estate.
As noted, the purpose of the split is novel. The usual purpose is to maximize decedent’s marital deduction or generation-skipping transfer tax exemption. Here, the intent is to save tax in the surviving spouse’s eventual estate by optimal use of decedent’s unified credit (Internal Revenue Code § 2010). Without reformation, Mr. Case’s unified credit will shelter assets that would be available for a charitable deduction in Mrs. Case’s estate. Simply put, two tax benefits are potentially available to the same asset and one will be wasted. It is this waste in the survivor’s estate that petitioners seek to avoid. It is clear that the proposed severance of these trusts will not in any way alter Mr. Case’s dispositive scheme. All beneficiaries remain entitled to precisely the same interests they would have if the will were not construed and reformed as proposed. The will, as reformed, will authorize the trustees to administer the multiple trusts in solido and the trustees will not receive any additional commissions. To the extent that the trusts authorize discretionary distributions of principal, the distributions shall be made in such manner as will maintain parity between the individual and charitable remaindermen.
New York courts have on many occasions authorized splits of single trusts into multiple trusts to effectuate a decedent’s intention to take full advantage of tax deductions and exemptions authorized by law (see, e.g., Matter of Nossiter, 146 Misc 2d 879; Matter of Choate, 141 Misc 2d 489). Such authority is not limited to reformations expressly permitted by the Internal Revenue Code but extends to other reformations which generally implement a testator’s underlying intent. Reformation should thus be allowed where it may be presumed that testator did not intend to waste any deduction or credit available to his wife’s eventual estate.
Based upon the foregoing, the will of Thomas C. Case is construed and reformed as requested.