ATTORNEY FOR APPELLANTS
Scott A. Weathers
The Weathers Law Office, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Robert G. Devetski
Barnes & Thornburg LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**

Oct 21 2008, 12:02 pm

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 46S05-0801-CV-27

NORMAN R. CARLSON, JR., INDIVIDUALLY
AND AS EXECUTOR OF THE ESTATES OF NORMAN
R. CARLSON AND HILDA D. CARLSON,
DECEASED, AND AS TRUSTEE OF THE TRUSTS
ESTABLISHED UNDER THE LAST WILLS AND
TESTAMENTS OF NORMAN R. CARLSON AND
HILDA D. CARLSON; MARGARET ANN CARLSON;
BETH CARLSON MONTIGUE; AND DAVID R.
CARLSON,

*Appellants (Plaintiffs below),*

v.

SWEENEY, DABAGIA, DONOGHUE, THORNE,
JANES & PAGOS; AND JOHN H. SWEENEY,

*Appellees (Defendants below).*

Appeal from the LaPorte Circuit Court, No. 46C01-0501-PL-036
The Honorable Robert W. Gilmore, Jr., Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 46A05-0602-CV-94

**October 21, 2008**

**Rucker, Justice.**

Arising in the context of a legal malpractice action, this case involves the reformation of trust provisions in two wills to comport with the testators' intent to avoid adverse federal estate tax consequences. We hold the trusts were properly reformed to include ascertainable standards in accordance with the Internal Revenue Code.

**Facts and Procedural History**

In 1988, Norman R. Carlson, Sr., and his wife Hilda Carlson (referred to collectively as "Testators") hired the Indiana law firm of Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos ("Law Firm") to prepare their wills. Among other things, Testators instructed Law Firm to draft the wills in a way that upon the deaths of their son Norman R. Carlson, Jr., and daughter in-law Margaret Ann Carlson property passing from them would not be subject to federal estate or state inheritance tax. In essence Testators intended that their grandchildren would avoid federal and state estate tax liability. Law Firm prepared separate wills purporting to accomplish this end. In part each will left some property to the other spouse, if surviving, and put the residue into a trust, with the First Citizens Bank as Trustee. Among other things the Trustee was instructed that upon the death of the last of Norman, Jr., and Margaret, any remaining balance in the trust was to be distributed to two named grandchildren, Beth Carlson and David Carlson. In addition each will provided that the Trustee could be replaced by a majority of the current beneficiaries. Relevant to this litigation the wills directed the Trustee to pay Margaret and Norman, Jr., "such sums from principal as the Trustee deems necessary or advisable from time to time for *either of their medical care, comfortable maintenance and welfare*, considering the income of either from all sources known to the Trustee." App. at 49, 58 (emphasis added).

Norman, Sr., died in June 1992, and his wife Hilda died shortly thereafter in August 1992. Both wills were admitted to probate. Thereafter in 1994 Norman, Jr., hired a Texas attorney to assist with management of the trust. In counsel's opinion the language of the trust provisions in the wills subjected the property to federal estate taxes. Specifically, there were no "ascertainable standards" for the distribution of the trust principal. Thus the trust created a general power of appointment under Internal Revenue Service ("I.R.S.") Treasury Regulations,

2

and property held under a general power of appointment is taxable upon the death of one holding the power. I.R.C. § 2041(a)(2)(b)(1).[1]

At the request of Norman, Jr., his wife Margaret, and their two children Beth and David (referred to collectively as "Beneficiaries") on July 27, 1994, Law Firm filed in the LaPorte Superior Court a "Petition to Reform Testamentary Trust" with respect to Norman, Sr.'s will. App. at 65. The trial court granted the petition on August 4, 1994, and entered an order that the will be reformed to read: "The Trustee may also pay to my said son, Norman R. Carlson, Jr. and/or his said wife, Margaret Ann Carlson, such sums from principal as the Trustee deems necessary from time to time for *either of their health and maintenance,* considering the income of either from all sources known to the Trustee." App. at 67 (emphasis added).[2] In support of its order the trial court entered the following pertinent findings:

> 6.     That if First Citizens Bank, N.A. is removed as Trustee and if Norman R. Carlson, Jr. or Margaret A. Carlson were appointed as Successor Trustee, the balance of the property in this Trust at the time of their respective deaths could be considered as an asset of their estates for federal estate tax purposes since they would have the power under Item III Section 2 [of the will] to make distributions of principal to themselves not limited by an ascertainable standard.

> *        *        *

> 9.     That the reformation of the trust to prevent any beneficiary as Trustee from exercising, for his own benefit the discretionary power of distribution authorizing invasion of principal not limited

---

[1] A general power of appointment is defined as a power that is exercisable in favor of the decedent, his estate, his creditors, or the creditors of the estate. See I.R.C. § 2041(b)(1). However, a power to consume or appropriate property for the benefit of the decedent that is limited by an "ascertainable standard relating to the health, education, support, or maintenance of the decedent" is not deemed a general power of appointment. I.R.C. § 2041(b)(1)(A). According to a federal regulation, "A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard . . . ." Treas. Reg. § 20.2041-1(c)(2).

[2] A similar petition was filed September 21, 1994 concerning Hilda's will, and a similar order was issued September 22, 1994. App. at 68. Throughout this opinion any reference to Norman, Sr.'s will or trust applies equally to Hilda's will or trust and vice versa.

3

by an ascertainable standard would be in the best interest of his children who are the remaindermen.

10.     That the [intent] of the Testator, Norman R. Carlson [Sr.], was to preserve the principal of the Trust for distribution to his grandchildren except for invasion of principal by Trustee pursuant to an ascertainable standard.

11.     That to subject the balance in the trust at the death of Norman R. Carlson, Jr. and Margaret A. Carlson under the existing standard of invasion could result in payment of death taxes, unnecessarily shrinking the amount that is passed on to the grandchildren, thereby substantially impairing the accomplishment of the purposes of the trust.

*     *     *     *

16.     That the Last Will and Testament of Hilda D. Carlson has been probated in this Court and her estate is now pending and the Court now finds that her Last Will and Testament is the same as the Last Will and Testament of Norman R. Carlson, [Sr.] supporting the contention of the Petitioner that his parents each intended that the principal of their Trust not be taxed again at the deaths of Petitioner and his wife, Margaret A. Carlson.

App. at 65-66.  No challenge was made to the trial court's findings and no appeal was taken from its order of reformation.

Thereafter on June 2, 1999, Beneficiaries filed a complaint against Law Firm alleging malpractice in the preparation of Norman, Sr.'s and Hilda's wills.  In essence Beneficiaries contended property in the trust at the time of the deaths of Norman, Jr., and Margaret would be considered an asset of their estates for federal estate tax purposes because they have the power to make distributions of principal to themselves "not limited by an ascertainable standard."  App. at 14.  According to the complaint, in drafting the wills, Law Firm used the phrase "'medical care, comfortable maintenance and welfare . . .' instead of terminology expressly set forth and approved in the Treasury Regulations (such as 'health, support and maintenance')."  App. at 15. "As a result, the Internal Revenue Service would assert that any property remaining on hand at

4

the death of Norman R. Carlson, Jr. or Margaret Ann Carlson will be subjected to federal estate tax, notwithstanding the express contrary desire of the testators . . . ." Id.

In addition to filing its answer – along with a counter-claim for outstanding legal fees – Law Firm also filed a motion for summary judgment essentially contending: (1) the provisions in the original wills for "medical care, comfortable maintenance and welfare" created an ascertainable standard, (2) even if the provisions did not create an ascertainable standard, operation of an "adverse holder" rule (also referred to as the "adverse interest" rule) prevented a general power of appointment from arising,[3] and (3) in any event the trust provisions in the original wills have been reformed such that ascertainable standards have now been established. App. at 39-40. Rejecting the first contention and not addressing the second, the trial court granted Law Firm's motion for summary judgment based on the last contention.

Beneficiaries appealed contending the subsequent reformations did not insulate them from adverse federal tax consequences, and thus the trial court erred by granting summary judgment in favor of Law Firm on this issue. In any case, according to Beneficiaries, the trial court erred in granting summary judgment because they sustained damages in attempting to correct the original wills regardless of whether the attempted correction may ultimately prove to be successful. On cross appeal Law Firm argued the trial court erred in failing to grant summary judgment in its favor on the first two grounds set forth above.

Affirming in part the trial court's judgment, the Court of Appeals concluded the trial court properly determined that the original wills did not establish ascertainable standards regarding a Trustee's ability to invade the trust corpus, and that the adverse interest rule did not

---

[3] This rule is an apparent exception to the definition of a general power of appointment. The exception provides:

> If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent – such power shall not be deemed a general power of appointment.

I.R.C. § 2041(b)(1)(C)(ii). According to Law Firm under the original wills the adverse interests of Norman, Jr., and Margaret prevented either of them from holding a general power of appointment. Br. of Appellee at 11-12.

5

protect the trust from tax liability.  <u>Carlson v. Sweeney, Dabagia, Donoghue,</u> 868 N.E.2d 4 (Ind. Ct. App. 2007), <u>aff'd on rehearing</u>, 872 N.E.2d 626 (Ind. Ct. App. 2007).  We agree with both propositions and summarily affirm the opinion of the Court of Appeals on these two points. However, the Court of Appeals reversed that portion of the trial court's judgment concerning the reformation of the trust.  On this point we disagree with our colleagues.  Having previously granted Law Firm's petition to transfer, we now affirm in part the judgment of the trial court.

## Standard of Review

When reviewing a grant or denial of a motion for summary judgment, our review is de novo.  <u>Freidline v. Shelby Ins. Co.</u>, 774 N.E.2d 37, 39 (Ind. 2002).  Summary judgment should be granted only if the evidence authorized by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and the moving party deserves summary judgment as a matter of law.  <u>Id.</u>

## Discussion

At the heart of this litigation is a federal court's recognition *vel non* of a state court's determination concerning the reformation of a will or trust.  Although federal law dictates how a decedent's estate will be taxed, state law controls in determining the nature of the legal interest the taxpayer had in the property or income sought to be reached by the statute.  <u>Drye v. United States</u>, 528 U.S. 49, 58 (1999); <u>United States v. Kollintzas</u>, 501 F.3d 796, 802 (7th Cir. 2007); <u>see also</u> <u>Estate of Vissering v. Comm'r of Internal Revenue</u>, 990 F.2d 578, 580 (10th Cir. 1993) ("We look to state law . . . to determine the legal interests and rights created by a trust instrument, but federal law determines the tax consequences of those interests and rights.").  The United States Supreme Court has made clear that neither the I.R.S. nor the federal courts are bound by a state trial court's decision.  "[W]here the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court."  <u>Comm'r of Internal Revenue v. Estate of Bosch</u>, 387 U.S. 456, 457 (1967).  Rather, "the State's highest court is the best authority on its own law."  <u>Id.</u> at 465.

6

Essentially, in the last analysis this Court will determine whether, how, and to what extent a trial court's reformation of a will or trust comports with Indiana law. Whether a federal court deems itself bound by such a determination is a question of federal law – a matter about which we express no opinion.[4] But see Griffin v. Griffin, 832 P.2d 810, 812-13 (Okla. 1992) ("In considering the terms of the trust agreement as a whole, this Court may make rulings concerning the grantor's intent which will be binding upon the IRS in its Federal tax litigation pending in the United States Tax Court.").

*Interpretation of the Testators' Wills*

The interpretation, construction, or legal effect of a will is a question to be determined by the court as a matter of law. Retseck v. Fowler State Bank, 782 N.E.2d 1022, 1025 (Ind. Ct. App. 2003). In construing the language of a will, our primary focus is upon the intent of the testator. Id. We look to the four corners of the will and the language used in the instrument in determining the testator's intent. Id. Also, the will in all its parts must be considered together. Epply v. Knecht, 141 Ind. App. 491, 230 N.E.2d 108, 111 (1967). When construing the language of a will, the court should strive to give effect to every provision, clause, term, or word if possible. Hershberger v. Luzader, 654 N.E.2d 841, 843 (Ind. Ct. App. 1995).

As the Court of Appeals correctly points out, "'a general intent in a will is to be carried into effect at the expense of any particular intent,' and that 'when there are conflicting intents, that which is the most important must prevail.'" Carlson, 868 N.E.2d at 19 (quoting Fowler v. Duhme, 143 Ind. 248, 42 N.E. 623, 626 (1896)) (internal quotation omitted). Examining the

---

[4] The issues of trust or will reformation to avoid federal estate tax liability have been frequently litigated. See Ike v. Doolittle, 70 Cal. Rptr. 2d 887, 909-10 (Cal. Ct. App. 1998) (reforming based on drafting error); Erickson v. Erickson, 716 A.2d 92, 101 (Conn. 1998) (reforming based on scrivener's error); Robinson v. Robinson, 720 So. 2d 540, 543 (Fla. Dist. Ct. App. 1998) (reforming inter vivos trust due to drafter's mistake because the pour-over trust testamentary element did not require adherence to the state's more traditional, restrictive law on reformation of wills); Hillman v. Hillman, 744 N.E.2d 1078, 1081 (Mass. 2001) (reforming the unqualified words "my issue" in a power of appointment to exclude the settlor's son (and the estate of the son) to whom the power was granted to avoid an apparently unintended general power of appointment); Simches v. Simches, 671 N.E.2d 1226, 1229-30 (Mass. 1996) (relying on frustration-of-purpose and mistake doctrines to grant reformation to avoid undesirable tax consequences); In re Will of Case, 585 N.Y.S.2d 1004, 1005-06 (N.Y. Sur. 1992) (reforming two trusts to minimize estate taxation); Griffin, 832 P.2d at 814 (reforming trust to delete objectionable language for marital deduction purposes; evidence of mistake clear; tax objectives can be considered in determining intent).

wills in this case, the Court of Appeals determined that "[a]lthough the testators may have wished to avoid federal estate taxes, this intent or purpose was clearly secondary to their intent or purpose to supply for the wants and needs of Norman, Jr., and Margaret." Id. We respectfully disagree.

First, reciting the facts in this case the trial court noted in part, "In 1988, Norman & Hilda Carlson retained the Defendant's law firm to prepare their respective last will & testaments. Upon meeting with [one of the firm's lawyers] it was determined that it was the Carlsons' intention to have these documents drafted *in a manner that would ensure* that no part of the property passing to their descendants would be subjected to federal estate or state inheritance tax. The defendants agreed to prepare the wills to effectuate this intention." App. at 7 (emphasis added). Beneficiaries do not dispute these facts, and indeed the very basis of their complaint for malpractice was the "Internal Revenue Service would assert that any property remaining on hand at the death of Norman R. Carlson, Jr., or Margaret Ann Carlson will be subjected to federal estate tax, notwithstanding the *express contrary desire* of the testators . . . ." App. at 15 (emphasis added). Second, in its 1994 order of reformation the trial court specifically found, among other things, that Testators "intended that the principal of their Trust not be taxed again at the deaths of Petitioner and his wife, Margaret A. Carlson." App. at 66.

Importantly, neither the facts before the instant trial court, nor the facts before the trial court reforming the trust provisions in Testators' wills, suggest that the Testators' most important intent was anything other than to avoid federal estate or state inheritance tax. Indeed this has never been a contested point.[5] Rather, the issue has been joined over whether the wills were drafted in a way to accomplish this end. This leads to the following discussion on reformation.

---

[5] During extended discussion at a hearing on the motion for summary judgment the trial court inquired, "Is there any dispute—well it appears that there is no dispute as to what was intended by the settlor, i.e. we're gonna skip, we're gonna skip a generation here. And there is no dispute that everyone intended that this not be includable in, in the son's estate." Tr. at 40-41. All parties agreed. Id. at 41.

*Reformation Under Indiana Law*

In granting partial summary judgment in favor of Law Firm, the trial court determined that the 1994 reformation of the wills modified the wording of the trust to conform with Testators' original intent "to create a will and testament that would transfer property without any tax consequences." App. at 11. As mentioned earlier in this opinion the original language, "*either of their medical care, comfortable maintenance and welfare*" was reformed to read "*either of their health and maintenance*." App. at 67, 70. The parties apparently agree that as reformed the trust now includes the necessary "ascertainable standards" and thus now complies with I.R.S. Treasury Regulations.[6] The Court of Appeals concluded however that the reformation "was contrary to Indiana law." Carlson, 868 N.E.2d at 18.

As an initial matter we note that the propriety of the trial court's 1994 judgment and order reforming the trust is not properly before us. Rather, the judgment is a binding decree that is not subject to collateral attack. Bd. of Comm'rs v. State ex rel. Gibson, 226 Ind. 633, 82 N.E.2d 891, 892 (1948) ("The law is well-settled that where matters in issue between the parties to an action were, or might have been, litigated in a former action, such matters are considered 'forever at rest.'") (citations omitted). Further, in reforming the trust the trial court issued findings of fact declaring among other things, "The [intent] of the Testator, Norman R. Carlson [Sr.] was to preserve the principal of the Trust for distribution to his grandchildren except for invasion of principal by Trustee pursuant to an ascertainable standard." App. at 66. Captioned "In The Matter of the Estate of Norman R. Carlson, Deceased," the Petition to Reform the Trust was filed by Norman R. Carlson, Jr. Carlson's wife and the Carlson grandchildren were apparently specifically listed in the petition.[7] "No matter how erroneous the finding and the

---

[6] Although the Beneficiaries do not expressly concede this point, their complaint is that "the overwhelming weight of authority holds that the Internal Revenue Service is not bound to subsequent state trial court orders purporting to reform offending language in testamentary instruments." Br. of Appellant at 9.

[7] The actual petition is not in the record before us. However in its reformation order the trial court found among other things:

9

judgment of the court based thereon may have been, such finding and judgment cannot be attacked in a collateral proceeding by one who was a party to said judgment or by one in privity with such a party." Grantham Realty Corp. v. Bowers, 215 Ind. 672, 22 N.E.2d 832, 836 (1939). The question of reformation having been determined some five years before this action was filed, the matter is now settled and closed.

In any event, assuming we were writing on a clean slate, we conclude the trial court properly reformed the trust provision in the original wills to include language establishing an ascertainable standard thereby complying with I.R.S. Treasury Regulation § 20.2041-1(c)(2). As reformed the wills are consistent with the original intent of the Testators of avoiding adverse federal estate and state inheritance taxes.

A written instrument, including a trust, may be reformed on grounds of mistake upon "clear and convincing evidence" not only of the mistake, but also of the original intent of the parties. Estate of Reasor v. Putnam County, 635 N.E.2d 153, 160 (Ind. 1994); 4A. Scott, Trusts § 333.4 (4th ed. 1987); 27 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 70:104 (4th ed. 2003); Restatement (Third) of Trusts § 62 comment b (2003). We point out however, the doctrine of reformation for mistake with regard to trusts differs from instruments such as contracts in one important respect. In contract law, reformation will not be granted unless the parties' mistake is mutual. Harlan Bakeries, Inc. v. Muncy, 835 N.E.2d 1018, 1029-30 (Ind. Ct. App. 2005) ("In Indiana, a trial court is permitted to reform written documents only in cases in which one party mistakenly executed a document which did not express the true terms of the agreement, and the other party has acted under the same mistake, or has acted fraudulently or inequitably while having knowledge of the other party's mistake."); Johnson v. Sherwood, 34

<hr />

14. That Beth Carlson, age 25, grandchild and one of the two (2) remaindermen of the trust has consented to the relief sought by this petition. . . .

15. That David Carlson, [brother] of Beth Carlson and remainderman is fourteen (14) years of age and the Court now finds that the relief requested by this Petition is in the best interests of Beth Carlson and David Carlson and that it is not necessary to protect the interest of David Carlson, a minor, to appoint a guardian ad litem.

App. at 65-66.

10

Ind. App. 490, 73 N.E. 180, 186 (1905) ("[T]hree things are necessary in a bill to reform a written instrument. It must appear, first, that there was a mutual mistake; second, the agreement actually made; and third, that which the parties intended to make."). But mutuality of mistake is not always required where trusts are concerned. Because a settlor usually receives no consideration for the creation of a trust, a unilateral mistake on the part of the settlor is ordinarily sufficient to warrant reformation. 4A. Scott, Trusts § 333.4 (4th ed. 1987); Restatement supra, § 62 cmt. a.

These general principles of trust reformation are not particularly controversial. However, Beneficiaries argued, and the Court of Appeals agreed, that in this jurisdiction the mistake must be one of fact, not one of law. The argument continued that the mistake in this case involved the misinterpretation of the legal effect of certain words used in the trusts and therefore was a mistake of law.

It is true that a long line of Indiana authority has held that reformation may only be had for mistakes of fact.[8] However, for the most part these cases involved reformations of instruments other than trusts. See, e.g., Hudson v. Davis, 797 N.E.2d 277, 283 (Ind. Ct. App. 2003) (reformation of a land contract); Estate of Spry v. Greg & Ken, Inc., 749 N.E.2d 1269, 1275-76 (Ind. Ct. App. 2001) (reformation of a release contained in a settlement agreement); Peterson v. First State Bank, 737 N.E.2d 1226, 1229-30 (Ind. Ct. App. 2000) (reformation of a promissory note); Makeever v. Barker, 85 Ind. App. 418, 154 N.E. 692, 694-95 (1926) (reformation of a bond); Shoe v. Heckley, 78 Ind. App. 586, 134 N.E. 214, 216-17 (1922) (reformation of a deed); Heavenridge v. Mondy, 49 Ind. 434, 439 (1875) (reformation of a promissory note).[9]

---

[8] This rule, observed in a number of jurisdictions, has its origins in the English common law. However, "generally no reason for the rule is given, though sometimes it is based upon the policy against permitting a party to plead in court his ignorance of the law." Henry L. McClintock, McClintock on Equity 262 (2d ed. 1948).

[9] But see Essex Group, 543 N.E.2d at 396-97. Although noting the doctrine of mistake, the Court affirmed the reformation of a trust agreement to include a lump sum distribution provision that was inadvertently omitted by scrivener's error. Id. at 397.

11

We are of the view that a slightly modified rule is appropriate for a testamentary trust. Indiana Code section 30-4-3-25 provides, "Upon petition by an interested party, the court may rescind or reform a trust according to the same general rules applying to rescission or reformation of non-trust transfers of property." This provision mirrors Restatement (Third) of Trusts § 62 (2003).[10] And the Restatement's comment b is instructive:

> Even if the will or other instrument creating a donative testamentary or inter vivos trust is unambiguous, the terms of the trust may be reformed by the court to conform the text to the intention of the settlor if the following are established by clear and convincing evidence: (1) that a *mistake of fact or law*, whether in expression or inducement, affected the specific terms of the document; and (2) what the settlor's intention was.

Restatement, supra, § 62 cmt. b (emphasis added); accord Restatement (Third) of Property, § 12.1 (4th ed. 2003). We adopt the Restatement view on this subject. As a practical matter most trust instruments are drafted by counsel, and the language in the instrument is the testator's only by adoption. In essence the testator informs counsel what she wants to accomplish and relies on counsel to carry out her wishes. If counsel makes a mistake in drafting and fails in this effort, then the testator's intent has not been realized. And this is so whether the mistake is one of fact or one of law. It appears to us that reformation is appropriate under such circumstances. See John H. Langbein & Lawrence W. Waggoner, Reformation of Wills on the Ground of Mistake: Change of Direction in American Law, 130 U. Pa. L. Rev. 521, 582-83 (1982) (commenting that there is no principled distinction between a lawyer's mistake involving the "misapprehension of the meaning of a term" [mistake of law] and "misrender[ing] a name or a sum" [mistake of fact]. "In either case the lawyer's mistake prevented the will from expressing an intent that the testator formed and communicated, and which a well-proven reformation case can correct.").

In this case the record is clear that as originally drafted, the trust provision in the Testators' wills did not accomplish that which was intended: to ensure that property passing to Norman Carlson, Jr., and his wife Margaret A. Carlson would not be subject to federal estate or

---

[10] The Restatement of Trusts reads, "A trust may be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust may be rescinded or reformed." Restatement, supra, § 62.

state inheritance tax upon their deaths. The trust provision failed in this regard because it did not establish an "ascertainable standard" for the distribution of trust principal thereby creating a general power of appointment under I.R.S. Treasury Regulations. To remedy this unintended result, the trial court reformed the first paragraph of Section 2, Item III of the wills by inserting an ascertainable standard governing trustee distribution of principal to Testators and deleting the problematic language that could be construed as liberal discretionary distributions. Inclusion of an ascertainable standard will effectively negate a general power of appointment, see I.R.C. § 2041(b)(1)(A), and thereby conform the trust to the Testators' original intent.

We reach three conclusions: (1) the record shows by clear and convincing evidence there was a mistake in the trust language of the original wills; (2) the record shows by clear and convincing evidence the Testators' true intent as exhaustively discussed above; and (3) the trusts were reformed consistent with Indiana law.

### *Reformation and Summary Judgment*

This case is before us in a rather unusual procedural posture. It should be remembered that Beneficiaries sued Law Firm in part for damages flowing from alleged negligence in drafting the original wills. The trial court granted summary judgment in favor of Law Firm based on the reformed wills declaring in part, "[t]he effect of this Order is to dismiss any claim by Plaintiffs against Defendants for adverse federal income taxation resulting from the drafting of the subject testamentary instruments." App. at 5. The underlying thrust of the trial court's judgment and order is that the trust language in the wills has now been reformed to comply with I.R.S. regulations and there will be no adverse federal estate consequences. Thus Beneficiaries have not and will not suffer damages. According to the trial court, "the Internal Revenue Service must accept the reformation as controlling given the fact situation in this case." App. at 11.

There are at least two problems with the trial court's position. First, as the Beneficiaries point out and the Court of Appeals observed, "[T]he Carlsons have already expended time and money dealing with the Wills; if the Lawyers' work with regard to the Wills is determined to be negligent, these costs may be considered damages flowing from the Wills regardless of whether

13

the IRS assesses a tax penalty." <u>Carlson</u>, 868 N.E.2d at 22 n.12. We agree. Summary judgment in favor of Law Firm on this point was error. Second, as for the I.R.S., it is clear that the agency as well as the federal courts are bound by this Court's determination that the Testators' wills were properly reformed in accordance with the laws of this State. <u>Bosch</u>, 387 U.S. at 465. It is also clear that the reformed wills include the "ascertainable standard" language that comports with I.R.C. § 2041(b)(1)(A). What is less clear, however, is what reaction the federal authorities will have to all of this. More precisely is there some reason the I.R.S. may find to avoid the effect of the reformation in spite of this Court's opinion? We have no way to know one way or the other, and decline to speculate.[11] Because there is a dispute of material fact on this issue, summary judgment in favor of Law Firm was inappropriate on this point as well.

## Conclusion

We affirm in part the judgment of the trial court. This cause is remanded for further proceedings.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

[11] Apparently the parties may request a Private Letter Ruling (PLR) from the IRS to resolve the question we pose. Rev. Proc. 2008-1, 2008-1 I.R.B 16. And we anticipate they will do so.