## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2018, 7:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Curtis E. Shirley
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

J. Lamont Harris
Henthorn, Harris, Weliever &
Petrie
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew Kliman, | May 9, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 54A01-1710-TR-2272 |
| v. | Appeal from the Montgomery Superior Court |
| Mutual Wealth Management Group, Trustee; Marjorie L. Kliman; Christine E. Kliman; and Carol L. Kliman, | The Honorable Heather L. Barajas, Judge |
| *Appellees-Respondents.* | Trial Court Cause No. 54D01-1512-TR-58 |

**Najam, Judge.**

# Statement of the Case

Andrew Kliman appeals the trial court's denial of his petition to compel trust distributions from the Stephen H. Kliman Irrevocable Trust ("the Trust"), which is managed by Mutual Wealth Management Group ("the Trustee").[1] Andrew raises the following four issues for our review, which we restate as the following three issues:

> 1.  Whether the trial court erred when it approved the Trustee's accounting.

> 2.  Whether the trial court erred when it rejected Andrew's numerous requests to compel the distribution of funds from the Trust's principal.

> 3.  Whether the trial court erred when it concluded that Andrew's petition to compel trust distributions was frivolous, unreasonable, or groundless.

The Trust raises the following additional issue for our review:

> 4.  Whether the Trust is entitled to appellate attorney's fees.

We affirm the trial court's judgment, and we decline to award appellate attorney's fees to the Trust.

---

[1] Marjorie L. Kliman, Christine E. Kliman, and Carol L. Kliman, other beneficiaries of the Trust and named respondents, do not participate in this appeal.

# Facts and Procedural History[2]

In January of 2002, Dr. Stephen H. Kliman ("Dr. Kliman" or "Settlor") established the Trust with the Trustee.  According to the relevant language of the Trust Agreement:

## ARTICLE V

## Marital Trust

Section 5.1.  If the Settlor's Spouse Survives.  If the Settlor's spouse, Marjorie L. Kliman, survives the Settlor, the Trustee shall hold the Trust Property as follows:

Clause 5.1(a).  The Trustee shall invest and reinvest the Trust property and shall collect the income therefrom and shall pay the entire net income therefrom the Settlor's spouse during her lifetime in convenient period installments, not less frequently than quarterly.

Clause 5.1(b).  In addition, *whenever the Trustee determines that the income of the Settlor's spouse from all sources known to the Trustee is not sufficient for her reasonable support, maintenance, health and education . . . or the reasonable support, maintenance, health and education . . . of the Settlor's descendants, then the Trustee in its discretion may pay or use for the benefit of the Settlor's spouse or one or more of the Settlor's descendants so much of the principal of the Trust as the Trustee determines to be required for those purposes.  In determining the amount of income or principal to be so disbursed, the Trustee shall*

---

[2]  The Statement of Facts in Andrew's brief on appeal is not consistent with our standard of review.  *See* Ind. Appellate Rule 46(A)(6)(b).

*take into consideration any other income or property which the beneficiary may have from any other source; and the Trustee's decision shall be conclusive as to the advisability of any such disbursements. For all sums so disbursed, the Trustee shall have full acquittance.*

\* \* \*

Clause 5.1(e). Upon the death of the Settlor's spouse, the balance of the Trust Property shall be held and administered pursuant to the terms of the Family Trust.

\* \* \*

## ARTICLE VI

### Family Trust

Upon the death of the survivor of the Settlor and the Settlor's spouse, the Trustee shall divide the Trust Property into separate equal shares, with one share for the benefit of each of the Settlor's three (3) children, namely, Andrew S. Kliman, Christine E. Kliman and Carol Lynn Kliman, hereinafter referred to as "Settlor's child(ren)." Should any of the Settlor's children die prior to the creation of the Family Trust, leaving surviving descendants, that child's separate share of the Family Trust shall be held for the collective benefit of that child's descendants . . . . The Trustee shall invest and reinvest each separate share and collect income therefrom which total amount shall be administered in accordance with the following terms and conditions.

Section 6.1. Shares Created for Children of the Settlor. The Trustee shall invest and reinvest each separate share created for the benefit of the children of the Settlor and collect income

therefrom which total amount shall be administered with the following terms and conditions:

Clause 6.1(a). <u>Health, Education, Maintenance and Support</u>. Until the Settlor's child attains the age of twenty-five (25) years, the Trustee shall distribute for the benefit of the Settlor's child so much of the principal and income of her separate share as the Trustee determines to be necessary or convenient for the child's health, education . . . , maintenance and support, after taking into consideration the child's means from other sources, adding any excess income to the principal.

Clause 6.1(b). <u>Income Distributions</u>. After the child attains the age of twenty-five (25) and for the remaining term of this Trust, the Trustee shall invest and reinvest that child's remaining share and shall collect the income therefrom and pay the entire net income of that child's share of the trust to her not less frequently than annually.

\* \* \*

Clause 6.1(d). <u>First Wedding</u>. When and if the Settlor's child becomes engaged to be married for the first time, the Trustee shall distribute the sum of [$10,000] . . . in order to pay the expenses of the child's first wedding.

\* \* \*

Clause 6.1(f). <u>Mandatory Principal Distributions</u>. The Trustee shall distribute, outright, in fee, to Settlor's child their share of the Trust Property as follows:

1. One-third (1/3) of the child's share of the Trust Property after the child attains the age of forty (40) years.

2. One-half (1/2) of the child's share of the Trust Property after the child attains the age of forty-five (45) years.

3. The entire remainder of the child's share of the Trust Property after the child attains the age of fifty-five (55) years.

\* \* \*

## ARTICLE IX

## Administration of Trust

Section 9.1. Intent of Trusts. It is the Settlor's intention that the Trustee attempt to act in the manner that the Settlor would in determining whether or not to make distributions under the provisions of this Trust. *It is the Settlor's intention that the beneficiaries of these trusts not depend on any distributions to defray his or her normal living expenses.* Therefore, it is Settlor's wish (but not direction) that the Trustee limit distributions to a particular beneficiary unless such beneficiary is (1) pursuing a course of study which should lead to gainful employment; (2) gainfully employed or actively seeking gainful employment; (3) not employed to care for a child; (4) otherwise managing to support herself or himself in a legal manner without reliance on this Trust; or (5) unable because of particular circumstances, such as age or physical or mental impairment or incapacity to support herself or himself. . . .

# ARTICLE XI

## Miscellaneous Provisions

\* \* \*

Section 11.2. Construction. The primary purpose of this instrument is to provide for the income beneficiary(ies) and the rights and interest of remaindermen are subordinate to that purpose. The provisions of this instrument shall be construed liberally in the interests of and for the benefit of the income beneficiaries.

Appellant's App. Vol. 2 at 78-81, 86, 92 (italics added; bold and underlines in original).

[4] Andrew is Dr. Kliman's oldest child and is the only child of Dr. Kliman's first marriage, which was to a woman other than Marjorie. Andrew has attended several post-secondary schools, but he has no degree. He attended and completed a culinary program and worked as a sous chef for a few months, but he then abandoned that career path. Andrew's employment has not been stable during his adulthood, and he currently stays at home with his two children because he does not believe he can obtain employment that will justify the cost of daycare. Andrew has been twice convicted of operating a vehicle while intoxicated.

Dr. Kliman died in late 2010 and was survived by Marjorie, Andrew, and Andrew's two half-sisters, Christine and Carol. Between May of 2011[3] and September of 2016 the Trustee made at least twenty-eight discretionary distributions to Andrew from the Trust's principal pursuant to Clause 5.1(b) of the Trust Agreement. One of those distributions was $15,000 for the purchase of a Jeep Cherokee, which Andrew purchased but then sold a few months later for $10,000. In addition to those twenty-eight distributions, the Trustee made regular distributions to Andrew to assist him with shortfalls in his budgeted monthly living expenses. In total, the Trustee's discretionary distributions to Andrew exceeded $168,000.

Nonetheless, in December of 2015 Andrew filed a petition to compel Trust distributions with the trial court. According to Andrew, the Trustee abused its discretion when it declined fifty-five additional distribution requests in a total amount of about $92,000. Andrew further sought to have the court compel the Trustee to pay him $3,500 per month for his rent and other bills. Andrew's fifty-five challenges included disbursement requests for which he had no supporting documentation, requests that he had not previously submitted to the Trustee, requests to be reimbursed for expenses he later admitted he had never incurred, requests for disbursements that the Trustee had in fact already paid to him, and a request for $10,000 for his first marriage pursuant to Clause 6.1(d) of

---

[3] Andrew turned twenty-five in 2007 and will turn forty in 2022, at which time the Trust's mandatory distributions will begin.

the Trust Agreement, even though in his subsequent testimony Andrew acknowledged that that provision is not in effect during Marjorie's lifetime. Tr. at 69-70.

[7]   The trial court held an evidentiary hearing in October of 2016 on Andrew's motion to compel. Shortly before that hearing, the Trustee filed an accounting with the court, and the court directed Andrew to file any objections to the accounting, aside from those that formed the basis of his motion to compel, within thirty days. Thereafter, Andrew filed a statement with the court in which he conceded that he had no objection to the Trustee's accounting aside from those heard at the October 2016 evidentiary hearing.

[8]   In September of 2017, the trial court entered judgment for the Trust on Andrew's motion to compel. The trial court's judgment addressed and rejected Andrew's numerous requests to compel distributions out of the Trust's principal. Specifically, the trial court found that the vast majority of Andrew's requests were never formally made to the Trustee or had already been paid by the Trustee.[4] The court also found that several of Andrew's requests to the Trustee were not supported by invoices or other evidence to show that Andrew had actually incurred or was going to incur the costs for which he had sought a distribution.[5] The court also agreed with the Trustee that the Trustee's

---

[4]   Twenty-nine of the trial court's findings reference at least one of these two grounds, though those twenty-nine findings cover substantially more than twenty-nine of Andrew's requests.

[5]   Six of the trial court's findings reference this basis for denying Andrew's requests.

distribution decisions were supported by the plain language of Clause 5.1(b) of the Trust Agreement.[6] Following its assessment of Andrew's requests, the court found that Andrew's motion to compel was frivolous, unreasonable, or groundless, and the court ordered Andrew to pay the Trust's attorney's fees. The court then approved the Trustee's accounting. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[9] Andrew appeals the trial court's judgment in which the court entered findings of fact and conclusions thereon after an evidentiary hearing. We review such judgments under our clearly erroneous standard. Findings are clearly erroneous if there are no facts to support them; a judgment is clearly erroneous if it is not supported by the findings. *E.g.*, *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018). We will not reweigh the evidence or assess the credibility of witnesses on appeal. *Id.* Rather, we will examine only the evidence in the light most favorable to the trial court's decision. *Id.* Insofar as this appeal requires the interpretation of a written trust agreement, we review such documents *de novo* and interpret them in accordance with the Settlor's intent. *Fulp v. Gilliland*, 988 N.E.2d 204, 207 (Ind. 2013).

---

[6] Several of the court's findings against Andrew stated multiple reasons in support of the Trustee's distribution decisions. For example, Finding 39(A) states that Andrew failed to formally request from the Trustee a distribution to cover certain legal expenses but that, even if Andrew had made such a request, "[a] bill for legal services . . . would not have been an item of support, maintenance, health or education for Andrew within the meaning of Clause 5.1(b) . . . ." Appellant's App. Vol. 2 at 15.

Further, at least with respect to the trial court's denial of Andrew's motion to compel, Andrew appeals from a negative judgment. As our Supreme Court has stated:

> We will reverse a negative judgment only if it is contrary to law—meaning the evidence leads to but one conclusion and the trial court reached an opposite conclusion. We consider the evidence in the light most favorable to the prevailing party and do not reweigh the evidence or judge witness credibility. A party appealing from a negative judgment has a heavy burden to establish there was no basis in fact for the judgment rendered.

*Hurley v. State*, 75 N.E.3d 1074, 1077 (Ind. 2017) (citations, omission, and quotation marks omitted).

### *Issue One: Approval of the Trustee's Accounting*

In his brief's Statement of the Issues, Summary of the Argument, and Conclusion, Andrew asserts that the trial court erred when it approved the Trustee's accounting because, in doing so, the court stated that "no beneficiary has filed any objections" to the accounting. *See* Appellant's App. Vol. 2 at 7. But Andrew makes no argument on this issue in the argument section of his brief. Thus, he has not preserved this issue for our review. *See* Ind. Appellate Rule 46(A)(8).

Andrew's waiver notwithstanding, Andrew made clear to the trial court that he had no objections to the Trustee's accounting aside from the distribution issues he had raised at the October 2016 hearing. *See* Appellant's App. Vol. 3 at 103. And the court entered a thorough, fifteen-page judgment supported by findings

and conclusions on each of Andrew's challenges presented at that hearing, which the court entered on the same day it approved the Trustee's accounting. There is no error on this purported issue.

### Issue Two:  Trust Distributions

Andrew next asserts that the trial court erred when it entered judgment for the Trust on his numerous challenges to the Trustee's distribution decisions.  "The words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life."  *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 868 N.E.2d 4, 12 (Ind. Ct. App. 2007) (quotation marks and alteration omitted) (quoting 26 C.F.R. 20.2041-1(c)(2)), *summarily aff'd on this issue*, 895 N.E.2d 1191, 1196 (Ind. 2008).[7]  According to Clause 5.1(b) of the Trust Agreement, during Marjorie's lifetime,

> whenever the Trustee determines that the income of the Settlor's spouse from all sources known to the Trustee is not sufficient for . . . the reasonable support, maintenance, health and education (including trade or technical school, college, professional and graduate education) of the Settlor's descendants, then the Trustee in its discretion may pay or use for the benefit of the Settlor's spouse or one or more of the Settlor's descendants so much of the principal of the Trust as the Trustee determines to be required for those purposes.  In determining the amount of income or principal to be so disbursed, the Trustee shall take into consideration any other income or property which the beneficiary may have from any other source; and the Trustee's decision shall

---

[7] Both parties mistakenly assert that our Court's opinion in *Carlson* was wholly vacated by our Supreme Court's grant of transfer.

be conclusive as to the advisability of any such disbursements.
For all sums so disbursed, the Trustee shall have full acquittance.

Appellant's App. Vol. 2 at 78-79.

[14] Andrew's arguments on appeal are not well taken. He first baldly asserts that "[a]ll of [his] requests fall under the definition of support, maintenance, health, and education" and, as such, "[t]he trial court clearly erred in finding the Trustee did not abuse its discretion." Appellant's Br. at 27. Andrew's assertion is not an argument supported by cogent reasoning. *See* App. R. 46(A)(8)(a).

[15] Similarly, Andrew asserts that "[s]ometimes the Trustee would make the distributions, sometimes not," and that the Trustee's insistence on formal requests and receipts was a "smoke screen" because such formality "was no longer an issue" after he had "filed his petition with the trial court" and discovery had occurred. Appellant's Br. at 27-28. Andrew's assessment that the Trustee would sometimes not require a formal request appears to be based on the Trustee's distributions to him to assist with budget shortfalls, but those distributions were based on projected budgets for which the Trustee had documentation. Andrew's further argument that it is proper for him to make an initial distribution request by way of a motion to compel in the trial court is not supported by citation to authority or cogent reasoning. *See* App. R. 46(A)(8)(a).

[16] Andrew asserts that his testimony with respect to what the Settlor would have wanted should control over the language of the Trust Agreement. Appellant's

Br. at 28. Andrew's position is not supported by citation to authority or cogent reasoning. *See* App. R. 46(A)(8)(a).

[17] Andrew argues that the Trustee abused its discretion by not equalizing payments between the beneficiaries. But Andrew does not demonstrate where he made that argument to the trial court. *See id.* Further, Andrew's argument does not address the Trust's plain language under Article V, which is the Article in effect during Marjorie's lifetime. In other words, Andrew's argument is not supported by citations or cogent reasoning. *See id.*

[18] Andrew next asserts that Section 9.1 permits the Trustee to make distributions to him if he is unemployed in order to care for a child. But at no point did the Trustee testify that it had declined a distribution request under this provision, and neither did the trial court rely on that language in entering judgment for the Trust. Andrew's argument under Section 9.1 is not supported by cogent reasoning. *See id.*

[19] Following the above litany of meritless assertions, Andrew turns to what he later describes as the core of his argument on appeal, namely, the trial court's denial of his motion with respect to his request for CPR training, a headboard, and a footboard. Although Andrew seems to suggest that he is challenging the standard used by the trial court in determining these issues and not the facts themselves, the substance of Andrew's actual argument here is less clear. Insofar as Andrew is challenging the evidence underlying the trial court's judgment with respect to the CPR training, we note that Andrew wholly omits

the trial court's finding that Andrew never actually incurred nor was going to incur any costs for CPR training and, as such, there was nothing to reimburse. We affirm the trial court's judgment with respect to the denial of a distribution for CPR training.

[20] With respect to the headboard and footboard, the trial court found as follows: "On July 19, 2011, Andrew requested $1,749.45 for a mattress, box springs, headboard and footboard. The Trustee approved only the mattress and box springs for $1,199.95 as a support and maintenance item, and [it] considered the headboard and footboard to be excessive." Appellant's App. Vol. 2 at 17. According to Andrew:

> This item illustrates what Andrew has had to deal with since 2010. . . . Picture a room with a mattress and box springs only. No headboard and no footboard. Looks like a dorm room for a single 19-year old college student. Not many married couples with three children live like this. Trustees should not have discretion to require it.

Appellant's Br. at 32. Andrew's argument with respect to the headboard and footboard in no way addresses our standard of review, the evidence in support of the trial court's judgment, or the plain language of the Trust Agreement. As such, we do not consider it further. *See* App. R. 46(A)(8)(a).

[21] Andrew next asserts that he is entitled to a $10,000 distribution for his first marriage pursuant to Clause 6.1(d). But Andrew ignores both his own testimony in the trial court that Clause 6.1 is not currently in effect and the plain language of the Trust Agreement that demonstrates that Article VI is not

in effect during Marjorie's lifetime. Rather, on appeal Andrew insists that, because he testified that his father would have paid for the marriage if he were still alive, the plain language of Articles V and VI should be disregarded. Andrew's argument again disregards our standard of review and the plain language of the Trust Agreement. *See id.*

[22] After taking a piecemeal approach to the trial court's judgment, at the end of his brief Andrew states that he "does not assert that the trial court made 55 mistakes in resolving the evidence." Appellant's Br. at 42. Rather, he continues, the trial court applied an "erroneous legal standard," and in support of that argument Andrew suggests that the trial court's judgment on his requests for CPR training, the headboard, and the footboard are representative examples of the court's error. *Id.* at 42-43. Insofar as Andrew's argument is that his own understanding of appropriate support, maintenance, health, and education costs should be controlling over the Trustee's discretion, Andrew's argument does not consider the plain language of the Trust Agreement, is not consistent with our standard of review, and is not supported by citations to relevant authority or cogent reasoning. *See* App. R. 46(A)(8)(a).

[23] Moreover, Andrew's apparent attempt to parlay his piecemeal arguments into a broader attack on the standard used by the trial court disregards the fact that the vast majority of the trial court's findings against Andrew were not based on whether a particular request could have qualified for a distribution under Clause 5.1(b). Rather, the vast majority of the court's findings were based on Andrew not having made a request for a distribution from the Trustee in the

first instance, Andrew having already been paid for a requested distribution, or Andrew not having incurred an expense to which a distribution might be applied. In other words, Andrew has wholly misunderstood the trial court's judgment, and we reject his argument.

[24] In sum, we affirm the trial court's denial of Andrew's motion to compel.

### *Issue Three: The Trial Court's Award of Attorney's Fees*

[25] Andrew next asserts not only that the trial court erred when it ordered him to pay the Trust's attorney's fees but that, in fact, he is the party to whom the trial court should have awarded attorney's fees. Under the Indiana Code, a trial court may award attorney's fees in a civil action if the court finds that a party brought the action on a claim that is frivolous, unreasonable, or groundless. Ind. Code § 34-52-1-1(b) (2017). As we have explained:

A claim is frivolous

> (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for the extension, modification, or reversal of existing law.

*Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1074 (Ind. Ct. App. 2007) (quoting *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989), *summarily aff'd by* 543 N.E.2d 627 (Ind. 1989)). A claim is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of

the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. *Kopka* at 1075 (citing *Kahn* at 170-71). A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party. *Kopka* at 1075 (citing *Kahn* at 171). A claim or defense is *not*, however, groundless or frivolous merely because the party loses on the merits. *Northern Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 431 (Ind. Ct. App. 2004) (citing *Kahn*, 533 N.E.2d at 171), *trans. denied*.

*Smyth v. Hester*, 901 N.E.2d 25, 33 (Ind. Ct. App. 2009) (emphasis in original), *trans. denied*.

[26] Andrew first asserts that the trial court erred in ordering him to pay the Trust's attorney's fees because the court did not provide Andrew an opportunity to demonstrate an inability to pay those fees. This argument is not supported by citation to authority; indeed, the case law is clear that a trial court may order an award of attorney's fees *sua sponte* and, thus, without inquiring into a party's ability to pay. *E.g.*, *Davidson v. Boone Cty.*, 745 N.E.2d 895, 900 (Ind. Ct. App. 2001). Andrew also asserts that his distribution requests were "the culmination of reasonable, prudent, conservative, and ordinary expenses every child would hope a parent pays for." Appellant's Br. at 39. This argument is not consistent with our standard of review and is not supported by cogent reasoning. *See* App. R. 46(A)(8)(a).

[27] Andrew next asserts that the Trust should pay his attorney's fees. We reject this argument without further discussion. We affirm the trial court's award of attorney's fees to the Trust.

## Issue Four:  Appellate Attorney's Fees

[28]    Last, the Trust requests on appeal that we order an award of appellate attorney's fees pursuant to Indiana Appellate Rule 66(E).  As we have explained:

> Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited . . . to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.  *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).  While Indiana Appellate Rule 66(E) provides this court with the discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect on the exercise of the right to appeal.  *Id.*  A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious.  *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007).

*Lamey v. Ziemer, Stayman, Weitzel & Shoulders, LLP (In re Lamey)*, 87 N.E.3d 512, 527 (Ind. Ct. App. 2017).  Further:

> Indiana appellate courts have formally categorized claims for appellate attorney fees into substantive and procedural bad faith claims.  To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility.  Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant fact appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court.  Even if the appellant's conduct falls short of

that which is "deliberate by design," procedural bad faith can still be found.

*Landmark Legacy, LP v. Runkle*, 81 N.E.3d 1107, 1119-20 (Ind. Ct. App 2017) (citations omitted).

[29] While the Trust's request for appellate attorney's fees is reasonable, again, we consider such claims with "extreme restraint" so as to not create a "chilling effect on the exercise of the right to appeal." *Id.* And we cannot say that Andrew's arguments on appeal were "something more egregious" than "mere lack of merit," or that they were otherwise utterly devoid of plausibility and the product of substantive bad faith. *Id.* As such, we decline to award the Trust appellate attorney's fees under Appellate Rule 66(E).

## Conclusion

[30] In sum, we affirm the trial court's approval of the Trustee's accounting and the trial court's denial of Andrew's motion to compel. We decline to award appellate attorney's fees to the Trust.

[31] Affirmed.

Robb, J., and Altice, J., concur.